*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

FLOYD and JUDY CORNELISON, )
) Supreme Court No. S-15647
Appellants, )
)
) Superior Court No. 3PA-11-01386 CI
v. )
)
) O P I N I O N
TIG INSURANCE, CRAWFORD & )
COMPANY/BROADSPIRE SERVICES, ) No. 7119 – August 12, 2016
GRIFFIN & SMITH, ROBERT GRIFFIN,)
CHRISTI NIEMANN, NORTHERN )
INVESTIGATIVE ASSOCIATES, )
DENNIS JOHNSON, DENARA, INC. )
and JOEL SERES, M.D., )
)
Appellees. )
)

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory L. Heath, Judge.

Appearances: Floyd and Judy Cornelison, pro se, Wasilla, Appellants. Adolf V. Zeman, Landye Bennett Blumstein LLP, Anchorage, for Appellees TIG Insurance and Crawford Company/Broadspire. Ray R. Brown, Jessica Dillon, and Michelle Nesbett, Dillon & Findley, P.C., Anchorage, for Appellees Griffin & Smith, Robert Griffin, and Christi Niemann. Matthew D. Regan and Alex Vasauskas, Holmes Weddle & Barcott, PC, Anchorage, for Appellees Northern Investigative Associates, Dennis Johnson, and Denara, Inc. Scott Leuning, Leuning & Renner, LLC, Sioux Falls, South Dakota, for Appellee Joel Seres, M.D.

Before: Fabe, Winfree, and Bolger, Justices. [Stowers, Chief Justice and Maassen, Justice, not participating.]

BOLGER, Justice.
WINFREE, Justice, dissenting in part.

## I. INTRODUCTION

An employer and its workers' compensation insurer challenged a former employee's continuing eligibility for workers' compensation, relying on surreptitious video surveillance and a doctor's report issued after the doctor viewed an edited surveillance video. The employee and his wife sued the employer's workers' compensation carrier and a number of others involved in the attempt to terminate benefits; they alleged several causes of action, contending that the video had been purposely edited to provide a false picture of the employee's physical abilities and that the defendants had participated to varying degrees in a scheme to defraud the Alaska Workers' Compensation Board. The trial court granted summary judgment or dismissal as to all of the defendants on all counts. We affirm in part, reverse in part, and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Floyd Cornelison injured his back at work in 1996 while shoveling dirt. He had back surgery later that year, but it did little to improve his condition. The Board found he was permanently and totally disabled (PTD) in 2001 under the odd-lot doctrine.[1] TIG Insurance, the workers' compensation insurer for Floyd's employer, did not contest that he was PTD; it reclassified his workers' compensation benefits as PTD

---

[1]    The odd-lot doctrine, which we have adopted, permits a finding of permanent total disability in a workers' compensation proceeding where a worker, "while not altogether incapacitated for work, [is] so handicapped that [he] will not be employed regularly in any well-known branch of the labor market." *Meek v. Unocal Corp.*, 914 P.2d 1276, 1279 (Alaska 1996) (quoting *Olson v. AIC/Martin J.V.*, 818 P.2d 669, 674 (Alaska 1991)).

in 2000. Floyd also received Social Security disability payments, and the employer received an offset for those payments.

In 2007 TIG began an investigation into Floyd's claim; in pleadings before the superior court, TIG said it sought "potential evidence to show that the benefits being paid [to Floyd] may be excessive." TIG hired a private investigation firm, Northern Investigative Associates, to conduct surveillance and search for information about Floyd. Dennis Johnson was the president and owner of Northern Investigative Associates and an officer of Denara, Inc., which did business under the name Northern Investigative Associates. After investigators employed by the firm surreptitiously filmed Floyd, Johnson created edited videos and presented those videos to TIG. Johnson also wrote reports based on the investigators' notes.

Floyd and his wife, Judy, alleged that Johnson edited the video to create a false impression of Floyd's physical capacities, making him look more capable than he was in reality and editing out behaviors that showed he was in pain, and contended that Johnson knew from prior experience in workers' compensation cases what type of evidence he needed to produce. They alleged Johnson created this false video to bolster his own business because he knew that if he did not provide sufficient evidence to terminate Floyd's benefits, the insurer would likely not use his investigative services in the future.

After Johnson reported that Floyd was more active than he claimed to be and provided the edited video, TIG required Floyd to attend an employer's medical evaluation (EME) in 2008 with Dr. Joel Seres, who had previously conducted other EMEs related to Floyd's workers' compensation case.[2] In a 1999 report Dr. Seres told

---

[2] Under AS 23.30.095(e) an employee is required to attend medical examinations requested and paid for by his employer "at reasonable times during the
(continued...)

the employer that Floyd had "a significant pain problem that precludes his ability to sit or stand for any significant length of time"; Dr. Seres thought Floyd had "a legitimate source for his pain," relating it to "the remarkable scarring and sclerosis of musculature that has occurred in his lower back as the direct result of his surgical procedures." That same year, a neuropsychologist associated with Dr. Seres administered a psychological assessment of Floyd and concluded that Floyd provided a reasonable effort in the evaluation and had "a considerable pain problem." And in a 2001 report, Dr. Seres wrote that Floyd had "[p]ersisting mechanical low back pain" and "[m]arked scarring of the musculature of the low back."

Before the 2008 EME, TIG supplied Dr. Seres with copies of the edited video and Johnson's reports. In his 2008 report, Dr. Seres had a completely different impression of Floyd, writing, "His exaggerated physical limitations as demonstrated in today's evaluation are in sharp contrast to the movements recorded in the surveillance reports and videos." Dr. Seres concluded Floyd had "an exaggerated pain syndrome, which is not supported adequately by the physical findings and is virtually invalidated by the surveillance study." Dr. Seres's report raised "the possibility of drug diversion" and mentioned the edited videos multiple times. According to an email between the insurance adjuster and the law firm representing the employer, Dr. Seres "strongly indicate[d] he [did] not believe [Floyd] is permanently and totally disabled based on the information contained in the surveillance video and the inconsistencies in the evaluation."

TIG subsequently authorized more surveillance by Johnson; the adjuster's notes record a conversation with one of Johnson's investigators in which the investigator

---

[2]     (...continued)
continuance of the disability."

reported that Floyd was "active in his shop and yard on a level of 10 hours a day every day." Johnson created another edited video, which TIG again sent to Dr. Seres. In a 2009 report, Dr. Seres noted that the new edited video contained "remarkable new material . . . that strongly argues that [Floyd] is actually not impaired in any significant way from a physical standpoint." Dr. Seres also commented, "I have never seen a more remarkable discrepancy between the severe disability that the patient demonstrates when he is seen by me, in comparison to the remarkably normal behavior and physical abilities seen in these surveillance films." He then proceeded to present his "conclusions based upon [his] medical review of the patient's physical capacities demonstrated during the surveillance." Dr. Seres concluded Floyd was "capable of returning to any type of work without restrictions on a full time basis." After acknowledging that he had been retained to give an opinion on Floyd's PTD benefits, Dr. Seres included the following comment in his report: "[Floyd] has indicated to me in the past that he is receiving Social Security Disability (SSDI) income as well. If this is true I believe that the [edited videos] demonstrate Social Security [f]raud."

In April 2009 TIG filed a petition asking the Alaska Workers' Compensation Board to terminate Floyd's PTD benefits; the law firm of Griffin & Smith represented the insurer, with a paralegal, Christi Niemann, signing the petition itself. Although the petition alleged "new evidence" supported terminating Floyd's benefits, no evidence accompanied the petition, and the petition did not set out any specific facts to support the assertion that Floyd was no longer PTD. Floyd filed a pro se opposition to the petition, denied that he was no longer PTD, and said, "There was no evidence stated or attached in the Petition." The next month, Griffin & Smith filed Dr. Seres's 2008 and 2009 reports with the Board.

The Board proceedings progressed toward a hearing. Floyd eventually obtained representation, but for a portion of the Board proceedings a non-attorney

represented him. In 2012 the employer filed an amended petition to terminate Floyd's benefits in which it set out the factual bases for its petition, including Dr. Seres's reports from 2008 and 2009. In the petition the employer stated that the date Floyd's disability ended was "a date in the future when the . . . Board determines that [Floyd] is not permanently and totally disabled." Floyd continued to receive PTD benefits during the course of the Board proceedings to terminate them.[3]

In 2011 both Floyd and Judy, representing themselves, filed suit in superior court against some of those involved in the attempt to terminate Floyd's benefits.[4] In their initial complaint they sued only TIG; its adjusters, Crawford & Company and Broadspire Services, Inc.; Griffin & Smith; and two of Griffin & Smith's employees, Niemann and attorney Robert Griffin. The Cornelisons alleged several tort claims and requested damages in excess of $100,000. About a month later they filed an amended complaint, adding as defendants Dr. Seres, Johnson, Northern Investigative Associates, and Denara, Inc. They filed a second amended complaint in October 2011; this is the latest complaint they filed. An out-of-state attorney, appearing with local counsel, represented the Cornelisons when they filed the second amended complaint.

In the second amended complaint, the Cornelisons' causes of action included tortious interference with contract rights; negligent infliction of emotional distress (NIED); intentional infliction of emotional distress (IIED); abuse of process; fraud, false light, defamation, libel, slander, and "other misrepresentations"; breach of

---

[3]      If the Board orders payment of benefits, the employer cannot unilaterally terminate those benefits; it may only modify or terminate those benefits through a Board order. *Underwater Constr., Inc. v. Shirley*, 884 P.2d 156, 161 (Alaska 1994).

[4]      Evidently the timing of the lawsuit was based on the Cornelisons' belief that the statute of limitations on their claims began to run in April 2009, when they first received the petition to terminate Floyd's benefits.

professional obligations on the part of the defendants; and violations of the Alaska Unfair Trade Practices and Consumer Protection Act (UTPA). The Cornelisons sought damages in excess of $100,000 and some type of injunctive relief against the defendants to prevent a situation like theirs from occurring again. The defendants answered, denying all claims and raising affirmative defenses. The defendants grouped themselves as follows for purposes of representation: Dr. Seres; Johnson, Northern Investigative Associates, and Denara, Inc. (Johnson); TIG,[5] Crawford & Company, and Broadspire Services, Inc. (TIG); and Griffin & Smith, Griffin, and Niemann (Griffin & Smith).

Litigation ensued, including discovery disputes. The Board proceeding continued toward a hearing as well. In February 2012 the Cornelisons asked the superior court to stay the proceedings until the Board case ended, basing their argument on two alternative grounds: primary jurisdiction and a balancing test imported from situations with both civil and criminal cases proceeding at the same time. In their motion for a stay they referred to AS 23.30.250(a) and (c),[6] and they said they would "submit a Third

---

[5]    Initially TIG had separate counsel in the superior court. In June 2013 the attorney representing Crawford & Company and Broadspire Services, Inc. began to represent TIG as well.

[6]    Alaska Statute 23.30.250(a) provides:

A person who (1) knowingly makes a false or misleading statement, representation, or submission related to a benefit under this chapter; (2) knowingly assists, abets, solicits, or conspires in making a false or misleading submission affecting the payment, coverage, or other benefit under this chapter; (3) knowingly misclassifies employees or engages in deceptive leasing practices for the purpose of evading full payment of workers' compensation insurance premiums; or (4) employs or contracts with a person or firm to coerce or encourage an individual to file a fraudulent compensation

(continued...)

Amended Complaint to make this particular statutory claim perfectly clear" to the defendants after the Board's decision. The defendants opposed, arguing that the Board did not have jurisdiction over tort claims so that primary jurisdiction did not apply. The court denied the motion to stay, holding that primary jurisdiction did not apply because none of the claims fell within the Board's primary jurisdiction; the court also decided that it was "not required to address the claims in the worker[s'] compensation case," so a stay would only prejudice the defendants.

In March 2013 Dr. Seres moved for summary judgment on all of the claims against him. That month Griffin & Smith moved for judgment on the pleadings under Alaska Civil Rule 12(c), arguing, that the exclusive remedy provision of the Alaska Workers' Compensation Act (AWCA) barred the suit.

In May 2013 the Cornelisons' attorneys asked to withdraw, and the Cornelisons moved for a stay of the proceedings so they could find new counsel. After an ex parte hearing on the motion to withdraw, the court permitted the withdrawal and granted a 90-day stay; the court also stated that it would not grant further continuances for the Cornelisons to get an attorney.

The Cornelisons did not find new counsel within 90 days, so they again asked the court to stay the proceedings pending resolution of the Board case. The court denied the stay. The Cornelisons petitioned this court for review of the order denying

---

[6]    (...continued)
       claim is civilly liable to a person adversely affected by the
       conduct, is guilty of theft by deception as defined in
       AS 11.46.180, and may be punished as provided by
       AS 11.46.120 – 11.46.150.

Alaska Statute 23.30.250(c) permits compensatory and punitive damages as well as attorney's fees to a prevailing party in a claim under subsection (a).

the stay; we denied review because by the time we considered the petition, the Board had already issued its final decision denying the petition to terminate Floyd's benefits. The Cornelisons filed a copy of the Board's decision and order with the superior court in December 2013.[7] In its decision, the Board found that Floyd continued to be permanently and totally disabled, declined to give any weight to Dr. Seres's reports, described Johnson's edited videos as "flawed" based in part on its review of one day of surveillance footage, and decided there was no evidence that Floyd had committed fraud in obtaining either his PTD or Social Security benefits. The Board awarded attorney's fees and costs to the Cornelisons.

TIG moved for summary judgment in the superior court in November 2013, arguing that there were no issues of material fact with regard to any of the claims against it. In June 2014 Johnson moved for summary judgment on some counts and for dismissal of others under Alaska Civil Rule 12(b)(6).

The superior court granted summary judgment to Dr. Seres in May 2014. It concluded that Dr. Seres owed no duty to the Cornelisons, so there could be no breach of a duty. It also decided that claims against Dr. Seres were time-barred because the evaluation that was the basis of the claims occurred in 2008, and the Cornelisons did not bring suit until 2011.[8] The superior court explained that the discovery rule for statute of limitations did not apply because the Cornelisons had alleged that Dr. Seres injured Floyd during the EME.[9] The court next decided that Dr. Seres was shielded from

---

[7]     On appeal the parties dispute the admissibility of the Board's decision. Because the superior court did not consider either its admissibility or any preclusive effect it might have on the issues here, we express no opinion about this dispute.

[8]     See AS 09.10.070(a) (two-year limitations period for tort actions).

[9]     See *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1274 (Alaska (continued...)

liability by AS 23.30.095(k) because he was an employer's independent medical examiner.[10]  It stated that AS 23.30.095(k) also protected Dr. Seres from any claims related to libel, and it noted Judy's concession that the fraud claims were not aimed at Dr. Seres; accordingly it granted summary judgment to Dr. Seres on the fraud, false light, defamation, libel, slander, and misrepresentation claim.  The court found no basis for the other claims against Dr. Seres, and it granted summary judgment for him on all remaining claims.

In July the court granted Griffin & Smith's motion for judgment on the pleadings.  It first concluded that, because Griffin & Smith served as attorneys for TIG in the workers' compensation case, Griffin & Smith "stepped into the shoes of TIG" and was thus "a party to the initial economic relationship," so that no liability for interfering with an economic relationship could attach.  The court also observed that Floyd's benefits were "never unilaterally terminated," so no breach occurred.  The court concluded the Cornelisons had not adequately pleaded either their negligent or intentional infliction of emotional distress claim against Griffin & Smith, so it granted judgment on the pleadings on those claims as well.  It also found no abuse of process because (1) the proceeding that served as the basis for the abuse of process claim was

---

[9]     (...continued)
2013) ("The common-law discovery rule tolls the running of an applicable statute of limitations '[w]here an element of a cause of action is not immediately apparent.' " (quoting *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1031 (Alaska 2002))).

[10]     Alaska Statute 23.30.095(k) sets out the process for second independent medical evaluations in workers' compensation cases.  The Board can order a second independent medical evaluation when the employee's physician and the employer's physician disagree about causation or the need for a specific treatment.  "The purpose of [a second independent medical evaluation] is to have an independent expert provide an opinion to the [B]oard about a contested issue." *Seybert v. Cominco Alaska Expl.*, 182 P.3d 1079, 1097 (Alaska 2008).

administrative rather than judicial and (2) the defendants were "simply exercising [their] right to be heard." The court decided any defamatory statements were privileged because they had been made in the workers' compensation proceeding. It also decided there was no misrepresentation, no plausible professional malpractice claim, and no plausible UTPA claim.

That day, the court also granted summary judgment to TIG. For the tortious interference with contract claim, the court used essentially the same rationale as it had in its order on Griffin & Smith's motion. Its reasoning for the abuse of process claim and the emotional distress claims was also similar. As for the misrepresentation claim, the court decided the Cornelisons had failed to show justifiable reliance on any statement and dismissed that claim. The court granted summary judgment on the defamation claims, noting that the defendants have an absolute privilege to publish defamatory matter within the bounds of an adjudicative proceeding. Finally, the court determined that the Cornelisons did not have a cause of action against TIG for professional malpractice or for a UTPA violation.

The court also granted Johnson's motion for summary judgment or for failure to state a claim. It decided that Johnson was an agent or employee of TIG, so no cause of action for tortious interference with any contract between TIG and the Cornelisons existed; the court accordingly dismissed this claim for failure to state a claim. With respect to the intentional infliction of emotional distress claim, the court cited *Chizmar v. Mackie*[11] for the proposition that it must make a "threshold determination 'whether the severity of the emotional distress and the conduct of the offending party warrant an instruction on intentional infliction of emotional distress.' " The court concluded that the Cornelisons did "not present any specific emotional injuries

---

[11]     896 P.2d 196, 208 (Alaska 1995).

resulting from [the] defendants' conduct" but "only generally claim[ed] 'emotional distress.' " After summarizing some case law, the court decided Johnson's conduct did not "[]rise to [the] level of outrageous conduct necessary to attach liability." It granted summary judgment to Johnson on that claim. With respect to the NIED claim, the court decided that there was no physical injury to the Cornelisons and that they did not fall within any exception to the rule requiring some type of physical injury, so it granted Johnson's Rule 12(b)(6) motion on that claim. The court dismissed the abuse of process claim against Johnson because Johnson was working for TIG and had no control over the administrative or legal proceedings.

The court decided that under AS 23.30.280(e), Johnson was immune from liability for any defamation claims because he was only providing information related to suspected fraud. The court explained that the alleged facts did "not support any type of misconduct" on Johnson's part and that "[r]egardless of how defendants edited the [video] for purposes of reporting the information to TIG, the evidence shows that the [edited video] accurately depicted [Floyd's] outdoor activities." It declined to find "editing, however sloppily, the high numbers of hours of footage into a compact presentable report of the relevant information amounts to any type of misconduct." Finally, it decided that any defamatory statements were privileged if made in conjunction with an adjudicative hearing. The court dismissed the professional negligence claim because there was no duty of care, and it dismissed the UTPA claim because the UTPA did not apply.

At the end of the three July 31, 2014 orders, the court included the following paragraph:

> The court finds itself an improper forum for claims of emotional distress resulting from [Board] hearings, yet, is concerned that claimants have little protection from poorly constructed and pursued claims for termination of benefits

pursuant to the AWCA.  The AWCA provides penalties for several types of actions under AS . . . 23.30.250 through AS . . . 23.30.260.  However, the Act does not contemplate the emotional distress suffered by claimants who are the victim[s] of injudicious, imprudent claims.  The Department of Labor and Workforce Development should consider implementing mechanisms to ensure that only well-founded complaints are allowed to protract over time.

The Cornelisons appeal.

## III.  STANDARD OF REVIEW

We review grants of summary judgment de novo.[12]  Summary judgment is appropriate if there is no genuine factual dispute and the moving party is entitled to judgment as a matter of law.[13]  In reviewing summary judgment, we draw all reasonable inferences in favor of the nonmoving party.[14]  We can affirm a grant of summary judgment on any basis appearing in the record.[15]

We review the grant of a motion for judgment on the pleadings de novo.[16]  When reviewing a dismissal granted under Civil Rule 12(c), "we read the facts alleged in the pleadings and the inferences to be drawn therefrom in a light most favorable to the non-movant."[17]

---

[12]  *Parker v. Tomera*, 89 P.3d 761, 765 (Alaska 2004).

[13]  *Id.*

[14]  *Id*.

[15]  *Id.*

[16]  *Prentzel v. State, Dep't of Pub. Safety*, 53 P.3d 587, 590 (Alaska 2002).

[17]  *Id.* at 589 n.1 (citing *Hebert v. Honest Bingo*, 18 P.3d 43, 46-47 (Alaska 2001)).

We review grants of motions to dismiss under Civil Rule 12(b)(6) de novo, "construing the complaint liberally and accepting as true all factual allegations."[18] "In reviewing a motion to dismiss, we do not consider materials outside the complaint and its attachments."[19] " 'Motions to dismiss are disfavored,' and before dismissal will be granted it must be 'beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief.' "[20] In reviewing motions to dismiss, we view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.[21]

"Interpretation of a statute is a question of law to which we apply our independent judgment; we interpret the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[22]

## IV.  DISCUSSION

### A.  The Superior Court Properly Dismissed Or Granted Summary Judgment On The Abuse Of Process Claims.

The Cornelisons argue that the superior court improperly dismissed their abuse of process claims on several grounds, including Griffin & Smith's failure to comply with Board regulations for filing the petition to terminate benefits and Johnson's

---

[18]  *Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1092 (Alaska 2014) (quoting *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012)).

[19]  *Id.* (quoting *Pedersen*, 292 P.3d at 184).

[20]  *Id.* (alteration omitted) (quoting *Adkins v. Stansel*, 204 P.3d 1031, 1033 (Alaska 2009)).

[21]  *Id.*

[22]  *Louie v. BP Exploration (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014) (citing *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003)).

alleged manipulation of the evidence. Griffin & Smith, TIG, and Dr. Seres all contend that the Cornelisons' abuse of process claim fails as a matter of law because it fails to identify any ulterior motive in bringing the Board proceeding. Johnson argues that abuse of process does not apply to an administrative proceeding.

The Cornelisons claimed in their complaint that the defendants committed the tort of abuse of process in the course of the petition to terminate Floyd's benefits. They alleged the defendants submitted "junk evidence" to the Board and in so doing breached various duties; they also alleged some defendants failed to follow prescribed Board processes, thereby thwarting the purposes of the AWCA.[23] But they did not allege any purpose in bringing the petition except to terminate Floyd's benefits.

In *Greywolf v. Carroll* we defined abuse of process as "the misuse of a legal process against another primarily to accomplish a purpose for which it was not designed."[24] Alaska law requires two elements for such a claim: (1) an "ulterior purpose independent from the process" and (2) "a willful act in the use of the process that is not proper in the regular conduct of the proceeding."[25] In *Sands v. Living Word Fellowship*, we emphasized that "a claim for abuse of process is a claim that the defendant misused process to attain some separate ulterior purpose independent from the process — for example, to extort the plaintiff and force him to take some action by the use of the

---

[23]    To the extent the Cornelisons base their complaint on TIG's and Griffin & Smith's failure to follow the Board's procedural regulations, any failure to comply with the Board's procedural regulations was a matter for the Board to resolve. We have previously recognized the Board's power to waive procedural requirements in its own regulations. *See Crawford & Co. v. Baker-Withrow*, 73 P.3d 1227, 1229 (Alaska 2003).

[24]    151 P.3d 1234, 1243 (Alaska 2007) (citing RESTATEMENT (SECOND) OF TORTS § 682 (AM. LAW INST. 1977)).

[25]    *Id.* (quoting *Sands v. Living Word Fellowship*, 34 P.3d 955, 961 (Alaska 2001)).

process as a threat."[26]  The tort of abuse of process applies to those who "us[e] the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it."[27]

The Cornelisons implicitly argued that TIG wanted to terminate Floyd's benefits because the benefits were expensive, not because TIG thought Floyd was in fact no longer disabled.  But even accepting this claim as true, TIG used the appropriate process — a Board proceeding — to accomplish this goal.  The Cornelisons do not point to a "separate ulterior purpose" in bringing the petition to terminate Floyd's workers' compensation, so they have not alleged facts sufficient to support this claim.  Their allegation that Johnson hoped to further his business by supplying TIG with an edited video that would result in termination of Floyd's benefits is not the type of ulterior purpose that supports an abuse of process claim.  The required motive in an abuse of process claim is to put pressure on the person who is wrongfully sued to perform or to refrain from performing an action unrelated to the process.[28]  The superior court properly dismissed or granted summary judgment on the abuse of process claims.

**B.      The Superior Court Properly Dismissed The UTPA Claims.**

The Cornelisons' UTPA claim alleged that the defendants had committed "many acts or practices" that "were and are intentional or reckless, unfair and deceptive, immoral, unethical, oppressive, and unscrupulous and offend public policy and constitute an inequitable assertion of power or position."  The superior court relied on different reasons to dismiss or grant summary judgment to the defendants on this claim.  It decided that "neither trade nor commerce" was exchanged between Dr. Seres and the Cornelisons

---

[26]      34 P.3d at 961.

[27]      *Id.* (quoting RESTATEMENT, *supra* note 24, § 682 cmt. b).

[28]      *Id.*

and that the Cornelisons "did not purchase or lease any goods or services" from either Griffin & Smith or Johnson, and thus the UTPA did not apply. As to TIG, it decided that the UTPA expressly exempted the insurance company.

Alaska Statute 45.50.481(a)(3) exempts from the UTPA "an act or transaction regulated under AS 21.36 . . . or a regulation adopted under [its] authority." Alaska Statutes 21.36 regulates "Act[s]" and "trade practice[s] in the business of insurance," including prohibitions on "unfair or deceptive act[s] or practice[s]."[29] Alaska Statute 21.36.125(a) specifically prohibits a number of acts or practices in the settlement of insurance claims, like misrepresentation of facts and failure to act in good faith. We agree with Griffin & Smith that the Cornelisons' claim is essentially one for unfair claims settlement, which falls within the AS 45.50.481(a)(3) exemption. The Cornelisons alleged the defendants acted in concert to misrepresent Floyd's physical capacities, delayed the proceedings before the Board in an attempt to gain an advantage, and refused to acknowledge their mistakes when confronted by the Cornelisons. Because this alleged conduct falls within the insurance industry exemption to the UTPA, the superior court properly dismissed the UTPA claim.

C. **The Superior Court Properly Dismissed The Interference With Contract Claims.**

The Cornelisons alleged a cause of action they called tortious interference with their financial rights and interests. As part of this cause of action, they alleged they had "an established and continuing financial property right and interest" in the PTD benefits Floyd received under the Board's 2001 order. They alleged the defendants interfered with this property right through the investigation, the medical evaluation, and the subsequent filing of the petition to terminate Floyd's benefits.

---

[29]     AS 21.36.010.

The superior court analyzed this claim as either a tortious interference with contract claim or a tortious interference with a prospective economic advantage claim. We consider the Cornelisons' claim to be one for tortious interference with contract because no prospective business relationship is at issue in this case.[30]

The tort of intentional interference with contractual relations has six elements: "(1) an existing contract between [the plaintiff] and a third party; (2) defendant's knowledge of the contract and intent to induce a breach; (3) breach; (4) wrongful conduct of the defendant causing the breach; (5) damages; and (6) absence of privilege or justification for the defendant's conduct."[31] The Cornelisons' claim appears to be based on their theory that Floyd is a third-party beneficiary of the insurance contract between his former employer and the employer's workers' compensation insurer.

But even if we were to accept this theory — and we do not now decide the question whether workers' compensation recipients are third-party beneficiaries of the insurance contract between the insurer and employer — there was never a breach of the contract because Floyd continued to received benefits throughout the litigation.[32] As a

---

[30]     *See Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 132 (Alaska 2000) (setting out the elements of tortious interference with a prospective economic advantage, including the existence of a prospective business relationship).

[31]     *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 716 (Alaska 2003) (citing *Odom v. Lee*, 999 P.2d 755, 761 (Alaska 2000)).

[32]     We recognize, as the Cornelisons note, that TIG could not simply controvert Floyd's benefits and unilaterally cease payment because they were being paid pursuant to a Board order. *See Underwater Constr., Inc. v. Shirley*, 884 P.2d 156, 161 (Alaska 1994) (holding that when benefits are paid pursuant to a Board order the employer "must first seek the approval of the Board" before modifying or terminating benefits). But the reason behind the continued payments is immaterial to the question

(continued...)

result, we agree with the superior court that the Cornelisons failed to set out a prima facie case of interference with contract rights. Therefore this cause of action was properly dismissed.

**D.    The Superior Court Properly Dismissed Or Granted Summary Judgment On The Common Law Fraud Claims.**

The Cornelisons alleged common law fraud against the defendants, but this cause of action fails as a matter of law. The elements of common law fraud are "(1) a false representation of fact; (2) knowledge of the falsity of the representation; (3) intention to induce reliance; (4) justifiable reliance; and (5) damages."[33] "As a general rule, in common law fraud, a person cannot justifiably rely on a statement she knows to be false."[34] The Cornelisons alleged that the defendants made false representations about Floyd's physical capabilities in the context of the workers' compensation case; they also contended that the statements in Dr. Seres's reports about possible drug diversion and Social Security fraud, with the implication that Dr. Seres would report the suspected fraud, were misrepresentations. The Cornelisons alleged that the defendants "launch[ed] and orchestrate[d] an extreme and outrageous offense" on them and "perpetuate[d] a fraud upon" both them and the Board by making misrepresentations about them.

The misrepresentations about Floyd's physical capabilities cannot serve as a basis of a misrepresentation claim by the Cornelisons. Presumably the Cornelisons

---

[32]    (...continued)
whether there was a breach of the contract.

[33]    *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010) (citing *Jarvis v. Ensminger*, 134 P.3d 353, 363 (Alaska 2006)).

[34]    *Id.* (citing 2 DAN B. DOBBS, THE LAW OF TORTS § 474 (2001)).

were aware these representations were false; if so, they could not have justifiably relied on those representations as a matter of law. Without this required element of justifiable reliance, their common law fraud claim was inadequate, and the superior court correctly dismissed the common law fraud claim.

But the Cornelisons also appear to advance a second theory of misrepresentation: they apparently also allege that (1) Dr. Seres and Griffin & Smith misrepresented their intention to report Floyd to Social Security for fraud; (2) Dr. Seres and Griffin & Smith knew they were not going to report fraud but falsely implied to the Board and the Cornelisons that they would do so; (3) they intended this threat of a fraud report to intimidate the Cornelisons and possibly cause the Cornelisons not to contest the petition to terminate benefits; (4) the Cornelisons justifiably relied on the statement of intent; and (5) the Cornelisons were damaged.

But the Cornelisons cannot show justifiable reliance on this asserted misrepresentation either. According to the Restatement, "[t]he recipient of a fraudulent misrepresentation can recover against its maker for [his] pecuniary loss resulting from [the misrepresentation] if, but only if, (a) he relies on the misrepresentation *in acting or refraining from action*, and (b) his reliance is justifiable."[35] The Cornelisons did not allege they suffered a loss because of any action they took or failed to take in reliance on the misrepresentation. They appear to allege they suffered emotional distress because they were concerned that Dr. Seres or Griffin & Smith would report Floyd for Social Security fraud; they also have alleged damages based on the time and energy expended in this lawsuit and in opposing the petition to terminate. But as we understand their argument, the emotional distress resulted from the misrepresentation itself, not from some action they took in reliance on it. And the action they took — vigorously opposing

---

[35] RESTATEMENT, *supra* note 24, § 537 (emphasis added).

the petition to terminate benefits and suing the defendants in this case — does not show any reliance on the statements "in Dr. Seres's reports suggesting social security fraud and Dr. Seres's duty to report it." To the contrary, it indicates that the Cornelisons did not believe the truth of the statements and wanted to clear their name. The superior court thus correctly dismissed or granted summary judgment on the common law fraud claim.

### E. The Superior Court Properly Dismissed The Professional Negligence Claims.

The Cornelisons brought a professional negligence action against Dr. Seres, TIG, and Johnson, alleging these defendants had not exercised the required level of skill that a reasonably prudent professional in their respective professions would exercise.[36] The superior court dismissed most of these claims because none of the defendants owed a legal duty to the Cornelisons. It dismissed the claim against TIG based on *O.K. Lumber Co. v. Providence Washington Insurance Co.*, where we held that a third party who is injured by a tortfeasor does not have a cause of action for breach of the covenant of good faith and fair dealing against the tortfeasor's insurer.[37]

"A professional malpractice action involves 'a professional's alleged breach of a duty of due care which was implied by law as a result of a contractual undertaking.' "[38] In this case, the Cornelisons did not have a contract with Johnson, and thus the superior court determined they had no cause of action for professional

---

[36] It does not appear that the Cornelisons made a specific claim of professional negligence against Griffin & Smith in the complaint; Griffin & Smith's name comes up only in allegations that TIG did not adequately control the firm. It thus appears that Griffin & Smith is correct that there was no professional negligence claim against it.

[37] 759 P.2d 523, 525-26 (Alaska 1988).

[38] *Breck v. Moore*, 910 P.2d 599, 603 (Alaska 1996) (quoting *Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848, 853 (Alaska 1991)).

malpractice against him. The court also decided there was no attorney-client or doctor-patient relationship between the Cornelisons and Griffin & Smith or Dr. Seres, so there could be no professional liability.

Our decision in *Smith v. Radecki* held that an employer's doctor in a workers' compensation case generally does not enter into a physician-patient relationship with the injured worker; we also acknowledged a "growing body of case law from other states" that recognizes independent medical examiners may have limited duties to those they examine.[39] But as in *Smith*,[40] these limited duties are not implicated here. The superior court thus correctly dismissed the professional negligence action against Dr. Seres. Because any professional malpractice action against TIG is barred by AS 23.30.055[41] and no contractual duty that gave rise to a duty of care existed between the Cornelisons and the other defendants here, the superior court properly dismissed the professional malpractice claims.

---

[39] 238 P.3d 111, 115-17 (Alaska 2010).

[40] *Id.* at 116-17. The Cornelisons apparently contend that Dr. Seres had a duty to them in his role as an employer's medical evaluator apart from any duty that might arise from a physician-patient relationship. The contractual relationship that might underlie this claim is not entirely clear, but appears to be related to their argument that they have some type of third-party beneficiary status under the workers' compensation insurance contract.

[41] AS 23.30.055 ("The liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer . . . ."). *See Stafford v. Westchester Fire Ins. Co. of N.Y.*, 526 P.2d 37, 43 (Alaska 1974) (holding that "*intentional* torts committed in connection with the investigation of claims and payment thereof" are not barred by the AWCA's exclusive remedy provision (emphasis added)), *overruled on other grounds by Cooper v. Argonaut Ins. Cos.*, 556 P.2d 525 (Alaska 1976).

**F.    Summary Judgment On Or Dismissal Of The Negligent Infliction Of Emotional Distress Claims Was Error.**

The Cornelisons alleged that the defendants negligently caused them "severe emotional distress, unnecessary pain and suffering[,] and inconvenience" by their conduct during the workers' compensation proceedings. In their complaint they also alleged that the defendants had caused them "physical distress" and "great physical . . . harm." We have held that "there is no recovery of damages for emotional distress where the emotional distress arises from negligent conduct and is unaccompanied by physical injury."[42] We have recognized two exceptions to this rule: the bystander exception and the preexisting duty exception.[43]

The superior court granted summary judgment to Dr. Seres on the NIED claim and dismissed the claim as to the other defendants on various grounds. It ruled that the claim against TIG was barred by AS 23.30.055, the exclusive remedy provision of the AWCA. It granted judgment on the pleadings to Griffin & Smith on the NIED claim for several reasons, concluding first that the Cornelisons had not alleged a physical injury or a special duty that would exempt them from pleading a physical injury. It then decided that AS 23.30.055 applied to Griffin & Smith, barring any "claim for NIED arising out of . . . untimely payments." The court also decided that AS 23.30.130 "foreclose[d] tort liability based on petitions for modification."[44] The court dismissed

---

[42]    *Chizmar v. Mackie*, 896 P.2d 196, 201 (Alaska 1995) (citing *Hancock v. Northcutt*, 808 P.2d 251, 257 (Alaska 1991)).

[43]    *Kallstrom v. United States*, 43 P.3d 162, 165-66 (Alaska 2002).

[44]    The superior court did not explain why it reached this conclusion, and Griffin & Smith has not argued that we should affirm the grant of judgment on the pleadings on this ground. While AS 23.30.130 permits an employer to bring a petition for modification of a Board award, the Cornelisons' complaint concerned the manner in

(continued...)

the NIED claim against Johnson under Rule 12(b)(6), because the Cornelisons "offer[ed] no facts to show that physical injury resulted from the conduct of defendants." The court granted summary judgment to Dr. Seres, concluding that he did not owe the Cornelisons a preexisting duty and that he was shielded from suit by AS 23.30.095(k), which immunizes a second independent medical evaluation physician from damages for providing an opinion in a workers' compensation case.

### 1. Dr. Seres

While we agree with the superior court that Dr. Seres did not owe the Cornelisons a preexisting duty that would excuse them from pleading a physical injury, we disagree that AS 23.30.095(k) shields Dr. Seres from liability. Alaska Statute 23.30.095(k) sets out the process the Board can use to order a second independent medical evaluation. It permits the Board to "require . . . a second independent medical evaluation" when there is a dispute "between the employee's attending physician and the employer's independent medical evaluation."[45] The second independent medical evaluation must be "conducted by a physician or physicians selected by the [B]oard" and paid for by the employer.[46] The statute also provides, "A person may not seek damages from an independent medical examiner caused by the

---

[44]     (...continued)
which TIG and Griffin & Smith brought and prosecuted the petition. The Cornelisons' complaint in essence alleged that the defendants committed fraud on the Board in bringing the petition because the defendants submitted evidence they knew was false. We see nothing in the language of AS 23.30.130 that prohibits lawsuits in these circumstances.

[45]     AS 23.30.095(k).

[46]     *Id.*

rendering of an opinion or providing testimony *under this subsection*, except in the event of fraud or gross incompetence."[47]

Dr. Seres did not render an opinion as an independent medical examiner under AS 23.30.095(k); rather he was selected by the insurance carrier, its adjuster, or its attorney to perform a medical evaluation of Floyd under AS 23.30.095(e).[48] Because Dr. Seres's opinion was not rendered under AS 23.30.095(k), the immunity provided in that subsection does not shield him from liability based on his written reports.[49]

---

[47]    *Id.* (emphasis added).

[48]    Alaska Statute 23.30.095(e) requires an employee "at reasonable times during the continuance of the disability . . . [to] submit to an examination by a physician . . . of the employer's choice."  If the opinion rendered under subsection (e) conflicts with the opinion of the employee's physician, only then may the Board may order an evaluation under subsection (k).  AS 23.30.095(k).

[49]    In addition to AS 23.30.095(k)'s plain language, the statute's legislative history supports our interpretation that this subsection applies only to physicians acting as second independent medical examiners.  A sectional analysis of the legislation, with the title "Board IME [Independent Medical Examiner]," stated that subsection (k) "establishes a presumption that the [B]oard's independent medical examiner's opinion is correct and provides the examiner with protection from damages for rendering an opinion or giving testimony."  H. Judiciary Comm., Sectional Analysis of House CS for CS for SB 322 (Labor & Commerce) § 18 (1988) (emphasis added).  (The provision creating a presumption that the independent medical examiner's opinion was correct was removed from the legislation before it was enacted.  Ch. 79, § 18, SLA 1988.)  The sectional analysis differentiated between amendments affecting subsections (e), which concerns an employer's medical examiner, and (k), which concerns the Board's independent medical examiner.  Sectional Analysis, *supra*, §§ 15, 18.

We recognize that in the superior court the Cornelisons appeared to agree that AS 23.30.095(k) applies to Dr. Seres.  Even if parties stipulate to a legal proposition, that stipulation is not binding on this court.  *Cf. Dresser Indus., Inc. v. Alaska Dep't of Labor*, 633 P.2d 998, 1004 (Alaska 1981) (quoting *S.F. Lumber Co. v. Bibb*, 73 P. 864,

(continued...)

Although Dr. Seres may not have had a special duty to the Cornelisons that would excuse them from alleging physical injury, they adequately alleged physical injury, as explained more fully in the following subsection. We therefore reverse the summary judgment entered in favor of Dr. Seres on the NIED claim and remand for further proceedings.

### 2. Griffin & Smith

The superior court granted Griffin & Smith judgment on the pleadings under Rule 12(c) in part because the Cornelisons had not pleaded a physical injury. While we have not specified the type of injury that constitutes physical injury for purposes of an NIED claim, in *Hancock v. Northcutt*, we relied on a leading torts treatise for the "general rule" that physical injury is required for an NIED claim.[50] According to that treatise, physical injury for purposes of an NIED claim can include illness or other physical consequences of the emotional distress.[51] The Restatement (Second) of Torts also recognizes that "long continued nausea or headaches may amount to physical illness, which is bodily harm" and "even long continued mental disturbance" may be an illness.[52] A defendant can prevail on a Rule 12(c) motion "only if [the plaintiff's] pleadings

---

[49]     (...continued)
865 (Cal. 1903)) (holding that stipulations as to the law do not bind the court). At oral argument before us, Dr. Seres could offer no authority to support application of AS 23.30.095(k) to an employer's independent medical examiner.

[50]     808 P.2d 251, 257 (Alaska 1991) (citing W. PROSSER & W. KEETON, THE LAW OF TORTS § 54 (5th ed. 1984)).

[51]     W. PROSSER & W. KEETON, *supra* note 50, § 54, *quoted* in *Hancock*, 808 P.2d at 257.

[52]     RESTATEMENT, *supra* note 24, at § 436A cmt. c.

contain no allegations that would permit recovery if proven."[53] The Cornelisons' allegations that they suffered great physical harm and physical distress are adequate at the pleading stage to set out the physical injury element of an NIED claim.[54]

Griffin & Smith denied in its answer the Cornelisons' allegations that they suffered great physical harm and physical distress. We have previously stated that "a Rule 12(c) motion 'only has utility when all material allegations of fact are admitted in the pleadings and only questions of law remain.' "[55] Material issues of fact remained after Griffin & Smith filed an answer, including whether the Cornelisons suffered physical injury, so the superior court erred in granting judgment on the pleadings on this basis.

On appeal, Griffin & Smith also contends that AS 23.30.055, the exclusive remedy provision of the AWCA, shields it from liability. But AS 23.30.055 provides protection from negligence claims to an employer and the injured worker's fellow employees, not to an employer's attorney. Suits against third parties are not barred by the exclusive remedy provision,[56] and Griffin & Smith is not Floyd's employer for purposes of the AWCA. Alaska Statute 23.30.055 provides in pertinent part, "The

---

[53] *Prentzel v. State, Dep't of Pub. Safety*, 53 P.3d 587, 590 (Alaska 2002) (citing *Hebert v. Honest Bingo*, 18 P.3d 43, 47 (Alaska 2001)).

[54] *Cf. McGrew v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 106 P.3d 319, 324-25 (Alaska 2005) (holding that allegations that plaintiffs suffered severe distress, personal injury, personal humiliation, mental anguish, pain and suffering adequately pleaded elements of an IIED claim).

[55] *Hebert*, 18 P.3d at 46 (Alaska 2001) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (2d ed. 1990)).

[56] AS 23.30.015. *See also, e.g.*, *Suave v. Winfree*, 907 P.2d 7 (Alaska 1995) (permitting negligence action against co-employees who were also owners of building where injury occurred).

liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer and any fellow employee to the employee . . . ." Alaska Statute 23.30.045(a) provides that "[a]n employer is liable for and shall secure the payment to employees of the compensation due under [certain sections of the AWCA]." Griffin & Smith is not liable for the compensation due Floyd; TIG, as the compensation carrier for his former employer, is liable for that compensation. Griffin & Smith points to no authority supporting its contention that the employer's attorney is protected by the exclusive remedy provision, and we have found none.[57] The superior court erred in granting judgment on the pleadings to Griffin & Smith on this basis as well. We therefore reverse the superior court's grant to Griffin & Smith of judgment on the pleadings as to the NIED claim.

### 3. Johnson

The superior court dismissed the NIED claim against Johnson pursuant to Rule 12(b)(6); it wrote that the Cornelisons "offer[ed] no facts to show that physical injury resulted from the conduct of defendants." When a court considers a motion to dismiss under Rule 12(b)(6), it must accept as true all factual allegations in the complaint.[58] As set out above, the Cornelisons adequately alleged that the defendants'

---

[57]     The superior court considered that Griffin & Smith "acted on behalf of TIG" and that "TIG may have a pseudo-fiduciary duty to timely pay the PTD benefits." It concluded that AS 23.30.055 protected Griffin & Smith from an NIED claim "arising out of . . . untimely payments." Although the Cornelisons indicated that TIG was not always timely in paying benefits, that was not the basis of their NIED claim. In any event, AS 23.30.155(f) imposes a penalty when Board-ordered compensation is paid untimely.

[58]     *Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1092 (Alaska 2014) (quoting *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012)).

conduct caused them physical injury.  The superior court's order dismissing the NIED claim against Johnson was thus erroneous.

### 4. TIG

On appeal the Cornelisons do not assert that the superior court was mistaken in its determination that the exclusive liability provision of the AWCA barred the NIED claim against TIG because it is a negligence claim.[59]  They have waived any argument that the court erred in dismissing the NIED claim against TIG,[60] so we affirm the dismissal of the NIED claim against TIG.

### G. The Superior Court Did Not Address The Statutory Fraud Claims, Which We Remand For Consideration.

On appeal to this court, the Cornelisons contend that the superior court failed to recognize the duties imposed on the defendants by AS 23.30.250(a), which permits a civil action against anyone who knowingly makes a false statement or representation to the Board or knowingly aids another in making a false statement or submission related to a workers' compensation benefit.  The appellees offer different responses to this contention:  Dr. Seres does not cite the statute; Griffin & Smith makes substantive arguments that it did not violate the statute; and both Johnson and TIG say the issue is raised for the first time on appeal and thus waived but also provide a substantive argument that they did not violate the statute.  TIG maintains that the statute

---

[59]     AS 23.30.055; *see Stafford v. Westchester Fire Ins. Co. of N.Y.*, 526 P.2d 37, 43 (Alaska 1974) (holding that "intentional torts committed in connection with the investigation of claims and payment thereof" are not barred by the AWCA's exclusive remedy provision), *overruled on other grounds by Cooper v. Argonaut Ins. Cos.*, 556 P.2d 525 (Alaska 1976).

[60]     *See Smallwood v. Cent. Peninsula Gen. Hosp., Inc.*, 227 P.3d 457, 460 (Alaska 2010) ("Failure to argue a point of law constitutes abandonment." (citing *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980))).

only came up in the context of a discussion in the superior court about primary jurisdiction "over civil tort claims arising from alleged misrepresentations made during a workers' compensation benefits investigation and termination proceeding."

We disagree with the contention that the statutory fraud claim was raised for the first time on appeal. The Cornelisons cited the statute in several contexts in the superior court, including the discussion related to primary jurisdiction and their opposition to Dr. Seres's motion for summary judgment. Both Griffin & Smith and the adjusters argued with regard to primary jurisdiction that AS 23.30.250(a) required the superior court, rather than the Board, to hear any fraud claims in this case. And the superior court, in denying a stay of the civil suit, cited AS 23.30.250(a), writing that "plaintiffs' claim relating to false statements must be brought before this court as opposed to the [Board]."

The Cornelisons' pleadings alleged that the defendants were aware that the information they were submitting to the Board was false or misleading — that the defendants were perpetrating a fraud on the Board. They alleged the defendants presented "tainted, dishonest" and "outrageously contrived" evidence and made "knowing . . . misstatements [or] misrepresentations" to the Board for the purpose of terminating Floyd's benefits. They have consistently argued that the allegation of Social Security fraud in Dr. Seres's report to the Board was false and served no legitimate purpose in the Board proceedings. They contend on appeal, as they did in the superior court, that Griffin & Smith and Dr. Seres knew the allegation of Social Security fraud was untrue, pointing to Dr. Seres's deposition testimony that he had communicated with a "legal beagle[]" and together they decided not to make a report to Social Security.[61]

---

[61] The timing of the discussion between Dr. Seres and the legal representative is not clear from the record.

Additionally, as the Cornelisons point out, Robert Griffin signed an affidavit in the Board proceeding stating that neither the adjuster nor Floyd's former employer had ever "asserted a claim of fraud" or "a claim of drug diversion in this case."[62] Implicit in the Cornelisons' argument is the contention that TIG and Griffin & Smith must have known the allegations of fraud and drug diversion were false because they did not make a claim about either one before the Board.

The superior court did not explicitly rule on the claims for statutory fraud under AS 23.30.250(a) in the various motions for dismissal and summary adjudication, nor did it discuss whether the statute might affect the claims of privilege the defendants raised in response to the IIED claims and the defamation claims. Alaska Statute 23.30.250(a) permits a civil suit for damages against a person who, inter alia, (1) knowingly makes false or misleading representations "related to a benefit" under the AWCA or (2) knowingly "assists, abets, solicits, or conspires in making a false or misleading submission affecting the payment, coverage, or other benefit" under the AWCA. The Cornelisons did not cite AS 23.30.250(a) in their amended complaint, but they alleged that the defendants, acting together, had perpetrated a fraud on the Board. They relied on AS 23.30.250(a) in several memoranda in support of motions, particularly their opposition to Dr. Seres's summary judgment motion and their motions for a stay and for a continuance.

It appears from their motions for a stay and for a continuance, which included a primary jurisdiction argument, that their theory of the application of this statutory tort was that the Board needed to determine in the first instance whether the

---

[62]     The petition to terminate benefits did not allege fraud, and there is no indication that the employer asked the Board to consider a fraud claim under AS 23.30.250(b).

evidence presented was false.[63] This was not an unreasonable position in light of the Board's statutory role as the fact finder with "the sole power to determine the credibility of a witness"[64] in workers' compensation proceedings. It would also be consistent with the manner in which a plaintiff must proceed in the tort of malicious prosecution, where a plaintiff must have first won the lawsuit that provides the basis for the claim.[65]

On appeal, TIG contends that AS 23.30.250(a) only applies to fraud by employee-beneficiaries. But the statute's language does not support this interpretation, and its legislative history undermines it as well. Among the proscribed conduct listed in AS 23.30.250(a) is conduct that only employers can engage in, such as "knowingly misclassif[ying] employees . . . for the purpose of evading full payment of workers' compensation insurance premiums." The language of other actions is neutral as between employers and employees: the statute applies to statements or submissions "related to a [workers' compensation] benefit" or "affecting the payment, coverage, or other [workers' compensation] benefit."[66] False statements made in support of termination of benefits obviously affect payment of a workers' compensation benefit and are "related to a benefit" under the AWCA.

---

[63] The Cornelisons filed a copy of the Board's decision with the superior court shortly after its decision issued. In denying the petition to terminate Floyd's compensation, the Board gave no weight to the testimony of Dr. Seres and Johnson based in part on its review of the video, which the Board said showed a large number of edits and cuts. The Board specifically noted that the edited video showed Floyd "sitting or bent down" followed by a shot of him standing "without capturing his efforts to rise."

[64] AS 23.30.122.

[65] *See Indus. Power & Lighting Corp. v. W. Modular Corp.*, 623 P.2d 291, 298 (Alaska 1981).

[66] AS 23.30.250(a).

The legislative history we have discussed in prior cases, and upon which TIG relies, is related to AS 23.30.250(b), which authorizes employers to bring fraud claims against employees and providers before the Board.[67] Unlike subsection (a), subsection (b) is limited to misrepresentations that result in *obtaining* benefits.[68] The language in subsection (a) is broader and, as noted, includes actions that are specific to employers. The legislature expanded the statutory language in subsection (a) to include employer activities in 1982;[69] nothing in the legislative history from 1995, when AS 23.30.250 was repealed and reenacted,[70] suggests that subsection (a) was intended to apply only to employees. Rather this legislative history indicates that the revised statute would "broaden[] the definition of misrepresentation."[71] As a matter of policy, it would be anomalous to permit a fraud action against an employee based on knowingly presenting false evidence "related to" or "affecting" a workers' compensation benefit but not to permit an action against an employer for the same conduct, particularly in light of the legislative directive that the workers' compensation statute not be construed in favor of either party.[72]

---

[67]     *See ARCTEC Servs. v. Cummings*, 295 P.3d 916, 923 (Alaska 2013).

[68]     AS 23.30.250(b).

[69]     *See* ch. 93, § 21, SLA 1982 (amending AS 23.30.250 to include misrepresentations for the purpose of denying benefits).

[70]     Ch. 75, § 11, SLA 1995.

[71]     *See* Letter from the Alaska Labor-Mgmt. Ad Hoc Comm. on Workers' Comp. to Rep. Eldon Mulder, Sponsor of H.B. 237, 19th Leg., 1st Sess. at 2, Alaska Leg. Microfiche Collection No. 8605 (Feb. 23, 1995).

[72]     AS 23.30.001(3).

Because the superior court did not address the statutory fraud claim in the first instance, we remand this claim.

**H.**     **The Cornelisons Waived The Defamation Claim As To Johnson, Griffin & Smith, And TIG On Appeal; We Remand The Defamation Claim Against Dr. Seres.**

The superior court decided that Johnson, Griffin & Smith, and TIG were entitled to absolute immunity from liability for any defamatory statements they made because those statements had been made in the context of the Board proceeding and were therefore privileged. The superior court used two rationales to grant summary judgment on the defamation claim to Dr. Seres: it decided both that the statute of limitations barred all claims against Dr. Seres because the EME took place in 2008 and that Dr. Seres had absolute immunity based on AS 23.30.095(k) because he was acting as an employer's independent medical examiner.

The Cornelisons included the defamation claim in their statement of points on appeal, but in their briefing before us, they failed to advance any argument that the superior court's privilege analysis as to Johnson, Griffin & Smith, and TIG was incorrect, so this claim is waived as to those defendants.[73] But they did argue that the superior court erred in granting Dr. Seres summary judgment on the statute of limitations.

With respect to Dr. Seres, the Cornelisons' defamation claim was based on statements he made in his EME reports, not on the EME exam itself. The superior court acknowledged this, repeating an interrogatory response in which the Cornelisons stated that "Dr. Seres accused [Floyd] of the felony criminal acts of fraud, and possible drug

---

[73]     *See Elsberry v. Elsberry*, 967 P.2d 1004, 1006 (Alaska 1998) (holding that a pro se litigant waived an issue that was included in his points on appeal but not argued in his brief).

diversion." Dr. Seres made the statement about Social Security fraud in a report dated March 4, 2009, and the statement about drug diversion in a report dated June 24, 2008. The Cornelisons contended they did not receive either of Dr. Seres's reports until May or June 2009. Because the defamation claim could not have accrued before Dr. Seres made the statements, the EME examination date relied on by the superior court could not serve as the starting date for purposes of the statute of limitations. If there was a factual issue about when the statute of limitations accrued on the defamation claim against Dr. Seres, it was error for the superior court to use that defense as a basis to grant Dr. Seres summary judgment on the defamation claim without making a specific finding about the accrual date.[74]

The other rationale the superior court used to grant summary judgment to Dr. Seres on the defamation claim was absolute immunity under AS 23.30.095(k). As we explained earlier, AS 23.30.095(k) does not shield Dr. Seres from liability.[75] Dr. Seres presented no argument identifying another possible basis for affirming on the defamation claim. Consequently we reverse the superior court's grant of summary judgment and remand this claim.

While we do not address the superior court's decision regarding the Cornelisons' defamation claim against the other defendants, we reject the argument that the litigation privilege to defamation claims applies to protect the defendants from all possible claims against them based on the defamatory statements. To accept this blanket defense would effectively eviscerate AS 23.30.250(a), which explicitly permits a cause of action against anyone who knowingly makes false or misleading representation

---

[74] *Cf. Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1278 (Alaska 2013) (reaffirming the propriety of using evidentiary hearings when there is a material factual dispute about the accrual date of a cause of action).

[75] *See* Part IV.F.1, *supra.*

"related to a benefit" or "affecting" a benefit or who aids or abets someone in doing so.[76]

It would also be contrary to our holding in *Industrial Power & Lighting Corp. v. Western Modular Corp.*, where we upheld the dismissal of a slander claim on the basis of the absolute litigation privilege but held that the party whose claim was dismissed could nonetheless bring a malicious prosecution action.[77] The absolute privilege in defamation cases is a common law privilege, and the legislature is free to modify the common law.[78]

## I. Granting Summary Judgment Or Dismissal On The Intentional Infliction Of Emotional Distress Claims Was Error.

The Cornelisons alleged that the defendants committed the tort of intentional infliction of emotional distress through their participation in the termination proceedings. To present a prima facie case of IIED, a plaintiff must show: "(1) the conduct is extreme and outrageous, (2) the conduct is intentional or reckless, (3) the conduct causes emotional distress, and (4) the distress is severe."[79] In considering summary judgment on an IIED claim, the trial court "should accept as true those facts most favorable to the plaintiff" and then "decide whether the severity of the emotional distress and the conduct of the offending party warrant submission of the claim to the

---

[76] *Cf. Rioux v. Barry*, 927 A.2d 304, 310 (Conn. 2007) (refusing to provide "absolute immunity for the communications underlying the tort of vexatious litigation" because to do so "would effectively eliminate the tort").

[77] 623 P.2d 291, 298 (Alaska 1981).

[78] *Cf. Chadha v. Charlotte Hungerford Hosp.*, 865 A.2d 1163, 1172-74 (Conn. 2005) (holding that statute prohibiting a cause of action for a report to an administrative agency if the report "does not represent as true any matter not reasonably believed to be true" abrogated the common law absolute litigation privilege and created only a qualified privilege (emphasis omitted)).

[79] *Chizmar v. Mackie*, 896 P.2d 196, 208 (Alaska 1995) (quoting *Teamsters Local 959 v. Wells*, 749 P.2d 349, 357 (Alaska 1988)).

jury."[80] According to the Restatement, to support a claim of IIED, the conduct in question must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" that it would cause "an average member of the community . . . to exclaim, 'Outrageous!' "[81] The superior court summarily adjudicated the IIED claims against all of the defendants, but it did so for different reasons. We thus discuss each defendant separately.

### 1. Griffin & Smith

Griffin & Smith moved for judgment on the pleadings under Civil Rule 12(c); it did not ask the court to grant it summary judgment. We have previously stated that "a Rule 12(c) motion 'only has utility when all material allegations of fact are admitted in the pleadings and only questions of law remain.' "[82] A party can prevail on a Rule 12(c) motion only if the nonmoving party's "pleadings contain no allegations that would permit recovery if proven."[83] In considering a Rule 12(c) motion for judgment on the pleadings, the court is limited to the pleadings: per Rule 12(c), if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated

---

[80] *Lincoln v. Interior Reg'l Hous. Auth.*, 30 P.3d 582, 589 (Alaska 2001).

[81] RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965), *quoted in Lybrand v. Trask*, 31 P.3d 801, 803 n.4 (Alaska 2001).

[82] *Hebert v. Honest Bingo*, 18 P.3d 43, 46 (Alaska 2001) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (2d ed. 1990)).

[83] *Prentzel v. State, Dep't of Pub. Safety*, 53 P.3d 587, 590 (Alaska 2002) (citing *Hebert*, 18 P.3d at 47).

as one for summary judgment." Thus the requirements for a Rule 12(c) motion are akin to the requirements of Rule 12(b)(6).[84]

Rule 12(c) has limited utility here because the material facts were subject to dispute. The Cornelisons alleged that the defendants, including Griffin & Smith, perpetrated a fraud on the Board by presenting evidence that was manipulated or false and had engaged in "extreme and outrageous conduct" against them, that the defendants' conduct was "intentional and/or reckless," and that the conduct had caused the Cornelisons "severe emotional distress." In its answer Griffin & Smith simply denied the factual allegations on which the Cornelisons' IIED claim was based. Griffin & Smith did not contend that the statements were legal conclusions not amenable to admission or denial. In *McGrew v. State, Department of Health & Social Services, Division of Family & Youth Services*, we held that the plaintiffs had adequately pleaded an IIED claim when they alleged "that [the division's] conduct was 'extreme, outrageous, and atrocious'; that its conduct was 'intentional and/or reckless'; that its conduct 'caused emotional distress' to the [plaintiffs]; and that their distress was 'severe' and that they 'suffered personal injury, personal humiliation, mental anguish, pain and suffering.' "[85] The allegations in

_____

[84] *Compare McGrew v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 106 P.3d 319, 322 (Alaska 2005) ("A complaint should not be dismissed for failure to state a claim [under Rule 12(b)(6)] unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." (citing *Angnabooguk v. State*, 26 P.3d 447, 451 (Alaska 2001)), *with Prentzel*, 53 P.3d at 590 ("The . . . defendants can prevail [on their Rule 12(c) motion] only if [the plaintiff's] pleadings contain no allegations that would permit recovery if proven."). *See also* 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2004) ("A significant number of federal courts have held that the standard to be applied on a Rule 12(c) motion based on all the pleadings is identical to that used on a Rule 12(b)(6) motion based solely on the complaint.").

[85] 106 P.3d at 324-25.

the Cornelisons' complaint are comparable, so the Cornelisons adequately pleaded the elements of an IIED claim.

Griffin & Smith argue that its conduct was absolutely privileged because it had the right to bring a petition to terminate Floyd's benefits and the alleged outrageous conduct was part of their efforts to terminate his benefits. But as the Restatement notes, liability is barred only when the actor "has done no more than to insist upon his legal rights *in a permissible way*."[86] The Cornelisons alleged that the defendants participated in a fraud on the Board by presenting evidence they knew or should have known was false with the purpose of terminating Floyd's benefits because they hoped to close an expensive claim, not because they thought he was in fact no longer disabled.

While an employer and its insurer have the right to petition to terminate an employee's benefits, that right does not include knowingly using false or misleading evidence in the course of petitioning. As discussed above, AS 23.30.250(a) permits a civil suit against anyone who "knowingly makes a false or misleading statement, representation, or submission related to a [workers' compensation] benefit" or someone who "knowingly assists, abets, solicits, or conspires in making a false or misleading submission affecting the payment, coverage, or other [workers' compensation] benefit." Because the Cornelisons' complaint includes allegations that Griffin & Smith participated in a fraud on the Board and conspired to submit evidence they knew was false in their efforts to terminate Floyd's benefits — actions which are impermissible under the statute — the complaint alleges that Griffin & Smith did more than simply file a petition to terminate benefits.

---

[86] RESTATEMENT, *supra* note 24, § 46 cmt. g (emphasis added); *see also Young v. Allstate Ins. Co.*, 198 P.3d 666, 689 (Haw. 2008) (permitting IIED claim based on conduct alleged to have occurred during the proceedings of a prior lawsuit).

The Cornelisons thus adequately set out the elements of an IIED claim in their complaint, so granting a judgment on the pleadings to Griffin & Smith on this claim was erroneous.

### 2. Dr. Seres

The superior court granted summary judgment to Dr. Seres on statute of limitations grounds, deciding that the IIED claim against Dr. Seres was based solely on the Cornelisons' contention that Dr. Seres had intentionally injured Floyd during the 2008 EME. The court also determined that AS 23.30.095(k) shielded Dr. Seres from any liability based on his written reports.[87]

With respect to the statute of limitations, the superior court erred in considering only claims of intentional injury during the EME in 2008.[88] The Cornelisons stated in both the interrogatory response the superior court cited and their opposition to Dr. Seres's motion for summary judgment that their IIED claim was also based on the allegations in Dr. Seres's reports that Floyd should be investigated for drug diversion and that he was committing Social Security fraud. In support of their opposition to Dr. Seres's motion they included a copy of deposition testimony from Judy stating that the IIED claim was based in part on Dr. Seres's calling Floyd a fraud; Judy included in that testimony information about the severity of Floyd's emotional distress. As we discussed above, the statute of limitations could not have begun on claims related to the

---

[87] As we have explained above, AS 23.30.095(k) does not apply to Dr. Seres's reports and cannot shield him from liability for the statements in them. *See* Part IV.F.1, *supra*.

[88] We agree with the superior court that any claims related to intentional injury that occurred *during* the 2008 exam were barred by the two-year statute of limitations. *See* AS 09.10.070(a).

allegation of fraud at least until Dr. Seres wrote the report.[89]   Granting summary

judgment to Dr. Seres on the IIED claim with respect to the allegations of Social Security

fraud and drug diversion was error.

### 3.    TIG

The superior court granted summary judgment to TIG on the basis that its

"presentation of evidence to the [Board] [was] not outrageous conduct" in that TIG was

"specifically and legally entitled to present such evidence."  The court also stated that the

Cornelisons had "not present[ed] any specific emotional injuries resulting from

defendants' conduct."  The court also found that the conduct did not meet the standard

of outrageousness set out in the Restatement and in case law.  Quoting *Shehata v.

Salvation Army*,[90] the court characterized TIG's conduct as follows:

> The defendants took reasonable steps in pursuit of [their]
> 'obligation to protect [their] interests.'    While the
> [Cornelisons] claim that Dr. Seres's opinion was biased or the
> investigator's work was biased, the [Board] will take into
> account a potential witness['s] bias in making its
> determination of credibility under AS 23.30.12[2], before
> rendering a decision to terminate or modify benefits.[91]

---

[89]    *See McCutcheon v. State*, 746 P.2d 461, 466-67 (Alaska 1987) (discussing
cases applying the discovery rule to defamation claims).

[90]    225 P.3d 1106, 1118 (Alaska 2010).

[91]    By the time the superior court granted summary judgment to TIG in
July 2014, the Board had already denied TIG's petition to terminate Floyd's benefits and
had given no weight to either Dr. Seres's opinions or to the edited videos.  The
Cornelisons submitted a copy of the Board's decision to the superior court in
December 2013 as a supplement to their oppositions to Dr. Seres's and TIG's motions
for summary judgment.  The superior court asked the parties questions about the Board's
decision at oral argument on the substantive motions.  At oral argument on the summary
adjudication motions, Griffin & Smith argued that the decision was hearsay.  TIG

(continued...)

(Footnote omitted.)

A party moving for summary judgment bears the initial burden of establishing, through admissible evidence, that there is no material issue of fact and that it is entitled to judgment as a matter of law.[92] The non-moving party in a summary judgment motion does not have the burden of coming forward with admissible evidence to show that material factual issues exist until the moving party meets its initial burden.[93] Thus TIG mischaracterized the summary judgment standard in the superior court when it argued in its summary judgment motion that the Cornelisons "failed to raise and provide support for any genuine issue of material fact."

TIG characterized the Cornelisons' claims as "essentially that they don't like the procedures in place under the [AWCA]" and asserted it had "followed established legal procedures." The Cornelisons asserted that the defendants, including TIG, had presented false or manipulated evidence to the Board and had perpetrated a fraud on the Board. In their opposition to TIG's motion, the Cornelisons stated that, even though TIG had no evidence to support the allegations about Floyd diverting drugs or committing Social Security fraud, it nonetheless submitted reports containing those allegations to the Board, and they additionally contended that TIG had brought the Board proceedings in bad faith.

TIG failed to offer any admissible evidence to support its contention that it had done nothing more than take actions it was "specifically and legally entitled to

---

[91]    (...continued)
indicated that it took the same position as Griffin & Smith regarding the Board decision's admissibility, but TIG was a party to the Board proceeding.

[92]    *Shade v. Co & Anglo Alaska Serv. Corp.*, 901 P.2d 434, 437 (Alaska 1995).

[93]    *Id.*

take." The evidence it presented to support its summary judgment motion was mainly deposition testimony or discovery responses from the Cornelisons and one of the Cornelisons' witnesses.[94] The discovery responses included statements alleging the adjuster knew the evidence supporting the petition to terminate "was corrupt and submitted in bad faith" and that the adjuster "opt[ed] to aid and abet and perpetuate false, fraudulent, misrepresentative, defamatory, libelous, and legally insufficient claims against the Cornelisons" by continuing to use both the surveillance materials and Dr. Seres's reports containing the accusations of fraud and improper drug use. The evidence TIG presented also included deposition testimony from Floyd that, read in the light most favorable to him, indicated he became so angry and despondent after reading the allegations of fraud contained in Dr. Seres's report that he became suicidal and had to seek treatment with a therapist. TIG offered no *evidence* to support its claim that it had done nothing more than follow established process in its attempt to terminate Floyd's benefits; it did not, for example, submit an employee's affidavit explaining the process it used to investigate the accuracy of the evidence it relied on.

Because TIG failed to offer any evidence to support its argument, granting summary judgment to TIG on the IIED claim was error.

### 4. Johnson

In granting summary judgment to Johnson on the IIED claim, the superior court decided that the "investigation was so covert that neither [Floyd] nor [Judy] was ever aware of [the investigators'] presence." From this the court concluded that "[t]he defendants' conduct during the investigation does not present as outrageous conduct." The court also stated that the Cornelisons did "not present any specific emotional injuries

---

[94] TIG also included a copy of an interlocutory decision of the Board in Floyd's case deciding that the edited video evidence would be admitted at the hearing.

resulting from [Johnson's] conduct," but rather "only generally claim[ed] 'emotional distress.' " It then explained that even if the Cornelisons "had presented sufficient facts to show severe emotional distress, that distress did not emanate from [Johnson's] actions."

The superior court's treatment of the IIED claim is puzzling because the Cornelisons' main IIED allegations against Johnson were not related to the actual act of surveillance but to the resulting edited videos. In their opposition to Johnson's motion for summary judgment they clearly asserted claims that the edited videos Johnson produced and provided to TIG, who then provided them to Griffin & Smith and Dr. Seres, had been edited by Johnson so as to present a false picture of Floyd's physical abilities. They argued, "It would be indecent and immoral if investigative firms, including [Johnson], . . . could then produce edited, altered video[] and investigative notes and provide [these] to an insurer, as a true and accurate depiction of the subject, knowing that the insurer and others will be relying on it . . . ." The Cornelisons argued that this conduct "would be utterly intolerable in a civilized community and is outrageous." They also asserted that Johnson "knew or should have known, during [its] editing process, that the surveillance video was not a reliable or accurate depiction of [Floyd]" and that Johnson knew the investigative report was not accurate. In addition, the Cornelisons cited a Louisiana workers' compensation case in which the Louisiana Court of Appeal noted that "[a] surveillance video must be viewed with a critical eye, bearing in mind that the person making the video has been hired by a party who desires to have the subject of the video depicted in the worst light. A video film can be edited. Scenes revealing the subject favorably can be deleted."[95]

---

[95]     *Jeanise v. Cannon*, 895 So. 2d 651, 664 (La. App. 2005).

In support of their opposition to Johnson's motion for summary judgment, the Cornelisons included an affidavit from Judy about discrepancies between the investigators' notes and the corresponding footage and a log of the times that were edited out of one day's video.[96] Judy's affidavit also noted inconsistencies in Johnson's deposition testimony about the edited videos. The Cornelisons submitted a copy of their expert report from the Board proceeding, which detailed several examples of what a reasonable person could infer were relevant omissions from the edited videos. For example, the report identifies at least three instances when the edited video did not show Floyd getting up from a bending or squatting position, with gaps in the time stamps at those points. Because the court is required at summary judgment to construe all evidence in favor of the non-moving party, the Cornelisons provided adequate evidence to raise material issues of fact about the accuracy of the edited videos, Johnson's state of mind in producing them, and causation.

The record does not support the superior court's statement that the Cornelisons "only generally claim[ed] 'emotional distress.' " In their opposition to summary judgment, the Cornelisons included copies of deposition testimony by both Floyd and Judy about their emotional distress. Floyd testified that he was suicidal for a period of time and sought counseling. While Judy's distress was not as severe, she testified about stress-related physical symptoms. Both attributed their distress to Johnson's edited videos as well as Dr. Seres's statements that were made after viewing the edited videos.[97]

---

[96] It appears neither party submitted the edited videos to the trial court.

[97] Johnson appears to argue that Dr. Seres based his allegations on his examination of Floyd rather than the edited videos, distancing the surveillance from the statements Dr. Seres made about Social Security fraud and drug diversion. But

(continued...)

On appeal Johnson argues, as it did below, that AS 23.30.280(e) bars any claim against it for providing the edited video.[98]  Johnson argues that AS 23.30.280(e) provides it with immunity "for providing information to TIG relevant to the merit of [Floyd's] workers'-compensation claim."  Alaska Statute 23.30.280(e) shields from liability for civil damages a person who reports fraud to certain organizations or individuals, including a workers' compensation adjuster or insurer.[99]  This subsection is

---

[97]    (...continued)
Dr. Seres's 2009 report explicitly cited the edited videos, saying, "I believe that the surveillance studies demonstrate Social Security [f]raud."  Dr. Seres also wrote that the additional surveillance provided to him in January 2009, six months after his final examination of Floyd, had "remarkable new material . . . that strongly argues that [Floyd] is actually not impaired in any significant way from a physical standpoint."  There is no indication in this report that his conclusions were based solely on his examination of Floyd the year before.  We recognize that Dr. Seres's deposition testimony could be construed as suggesting otherwise, but that difference is part of the factual dispute about causation.

[98]    Griffin & Smith also argues that it is protected from liability by AS 23.30.280(e).  But if Griffin & Smith thought it was furnishing to the Board material about possible fraud on Floyd's part, it is not clear why Griffin & Smith, as attorneys for TIG, failed to bring a fraud petition before the Board and why Griffin signed an affidavit saying the adjuster and insurer had "never asserted a claim of fraud in this case."

[99]    Alaska Statute 23.30.280(e) provides in full:

> Except as provided in (f) of this section, a person is not liable for civil damages for filing a report concerning a suspected, anticipated, or completed fraudulent act or a false or misleading statement or representation with, or for furnishing other information, whether written or oral, concerning a suspected, anticipated, or completed fraudulent act or false or misleading statements or representation to
>
> (1)    law enforcement officials or their agents and employees;

(continued...)

part of a provision added to the AWCA in 2005 that established a section within the Division of Workers' Compensation to investigate fraud.[100]

The superior court relied on this statutory subsection in granting summary judgment to Johnson on the defamation claim, but the statute forecloses any civil damages, not just those for defamation. As the superior court noted, the statute expressly states it does not preclude liability for civil damages if the liability arose as a result of gross negligence or reckless or intentional misconduct.[101] The superior court focused on the "misconduct" aspect of this exception to immunity and decided that the edited videos "accurately depicted [Floyd's] outdoor activities" and that "editing, however sloppily, the high numbers of hours of footage into a compact presentable report" did not amount to misconduct.

The superior court did not explain the basis for its decision that there was no material factual dispute that the edited videos accurately depicted Floyd's activities.

---

[99]     (...continued)
  (2)    the division of workers' compensation, the division of insurance in the Department of Commerce, Community, and Economic Development, or an agency in another state that regulates insurance or workers' compensation;

  (3)    an insurer or adjuster or its agents, employees, or designees, or the risk manager of a self-insured employer under this chapter.

[100]    Ch. 10, § 65, FSSLA 2005. The Cornelisons do not argue that AS 23.30.280 does not apply in these circumstances, so we assume without deciding that it does.

[101]    Alaska Statute 23.30.280(f) provides that subsection (e) "do[es] not preclude liability for civil damages . . . if the liability arose as a result of gross negligence or reckless or intentional misconduct."

The superior court appears to have misunderstood the Cornelisons' assertions about why the edited videos were inaccurate. They did not dispute that Floyd was the person in the edited videos; rather what they alleged was that Johnson had deleted Floyd's pain behaviors or otherwise edited the video to depict Floyd as more physically capable than he was. The Cornelisons' expert report documented several instances of missing or omitted material from the edited videos. The Board echoed these concerns about the edited videos' accuracy in its decision, noting that the edited video of the August 15 surveillance footage showed Floyd "sitting or bent down" followed by a shot of him standing "without capturing his efforts to rise." Dr. Seres specifically noted the absence of pain behaviors in the edited videos in his report; from this absence of pain behaviors he concluded that Floyd "does not likely have significant back pain."

The record indicates that Johnson created the edited videos from raw surveillance footage that its employees took, suggesting that it knew what was in the edited videos and what was omitted from them. Similarly, Johnson created the surveillance reports it provided to TIG from the investigators' field notes. Given the Cornelisons' allegation that surveillance footage of Floyd's pain behaviors was edited out or not filmed and Dr. Seres's conclusions about Floyd based on absence of pain behaviors in the edited videos, we disagree with the superior court's conclusion that editing "however sloppily" can never amount to misconduct. The statute permits liability when the person making the report is grossly negligent,[102] and we have previously stated that gross negligence "signifies more than ordinary inadvertence or inattention, but less than conscious indifference to consequences; and it is . . . merely an extreme departure

---

[102]    *Id.*

from the ordinary standard of care."[103]  Purposely editing a video, selectively filming a subject, or even extremely sloppy editing could all meet the standard of gross negligence or of reckless or intentional misconduct.

We conclude the Cornelisons provided enough evidence to show that a material factual dispute existed about the accuracy of the edited videos and the manner in which Johnson created them.  They also presented more than generalized claims of emotional distress.  Because the superior court failed to address the issues in dispute in the IIED claim against Johnson, we reverse the grant of summary judgment on this claim and remand to the superior court.

J.     **The Cornelisons Waived The Invasion Of Privacy Claim.**

The Cornelisons contend that the superior court failed to address their invasion of privacy claim.  They do not provide a record cite to show where they alleged this claim in their second amended complaint.  We were unable to identify a claim in the second amended complaint similar to one the Cornelisons discuss in their brief before us, so we deem this argument waived.

V.     **CONCLUSION**

We VACATE the judgments entered against the Cornelisons.  We REVERSE the superior court's grant of summary judgment or dismissal as to all defendants on the IIED claims, REVERSE the dismissal of the NIED claims as to Johnson and Griffin & Smith, and REVERSE the grants of summary judgment to Dr. Seres on the NIED and defamation claims.  We REMAND those claims and the Cornelisons' AS 23.30.250(a) claim to the superior court for further proceedings consistent with this opinion.  We AFFIRM the superior court on all other issues.

---

[103]      *Storrs v. Lutheran Hosps. & Homes Soc'y of Am., Inc.*, 661 P.2d 632, 634 n.1 (Alaska 1983) (quoting WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 34 (4th ed. 1971)).

WINFREE, Justice, dissenting in part.

I respectfully disagree with the court's conclusion that the Cornelisons failed to adequately brief the superior court's dismissal of their defamation claim against TIG Insurance and Griffin & Smith based on "absolute privilege."

I start with the general proposition that the absolute litigation privilege applies only to statements that are pertinent to or have some relationship to the legal proceedings in which they are made.[1] The court itself makes it abundantly clear that one of the Cornelisons' primary arguments against TIG and Griffin & Smith in the superior court was the illegitimacy of using Dr. Seres's Social Security fraud and drug diversion allegations in the workers' compensation proceeding.[2] Yet the superior court did not expressly address the Cornelisons' argument when it dismissed their defamation claims against TIG and Griffin & Smith. Although noting the general rule I have just stated, the

---

[1]    *See Lawson v. Helmer*, 77 P.3d 724, 727-28 (Alaska 2003) (holding witness testimony absolutely privileged because it was "pertinent to the matter under inquiry" and "[i]n such instances an action for libel or slander will not lie even [if] the testimony is given maliciously and with knowledge of its falsity" (quoting *Nizinski v. Currington*, 517 P.2d 754, 756 (Alaska 1974))); *Gilbert v. Sperbeck*, 126 P.3d 1057, 1059 (Alaska 2005) (applying witness immunity to testimony by expert witnesses, "if pertinent to the matter under inquiry" (citing *Nizinski*, 517 P.2d at 756)); *see also Nizinski*, 517 P.2d at 756 (holding testimony by witnesses, including affidavits, is absolutely privileged if "pertinent to the proceedings in which it [is] tendered" or has "some reasonable reference or connection to the subject of inquiry"); *Smith v. Banister*, 9 Alaska 632, 635, 637 (D. Alaska 1939) (stating rule that defamatory words by witness in judicial proceeding are "absolutely privileged *only* when [they] are connected with or are relevant or material to the subject of inquiry" (emphasis added)); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 114, at 817 (5th ed. 1984) (stating American rule is "there is no immunity unless the particular statement is in some way 'relevant' or 'pertinent' to some issue in the case"); RESTATEMENT (SECOND) OF TORTS §§ 586-88 (AM. LAW INST. 1977) (limiting absolute privilege of attorneys, parties, and witnesses to statements that have "some relation to the proceeding").

[2]    Opinion at 30-31.

sum and substance of the superior court's actual rulings — the former by summary judgment and the latter by judgment on the pleadings — was that because the alleged defamation took place within the workers' compensation proceeding the absolute privilege applied. One of two things must be true: Either the superior court failed to appreciate the threshold legal predicate to the application of the absolute litigation privilege or the superior court failed to expressly note it was concluding as a matter of law that Dr. Seres's statements about possible Social Security fraud and drug diversion were pertinent to and reasonably connected to the workers' compensation proceedings.[3]

In the Cornelisons' brief to us, in a section heading including the words "defamation" and "libel," they argue that Griffin & Smith, on TIG's behalf: deliberately launched a personal attack on Mr. Cornelison; despite knowing Dr. Seres's letter contained untrue allegations about Social Security fraud and drug diversion, filed it with the workers' compensation board; and later claimed it was not asserting Mr. Cornelison was committing Social Security fraud or drug diversion, but it did not ask to have the letter or allegations withdrawn. Given the Cornelisons' pro se status and our clear understanding of the arguments they were making to the superior court, this seems more than sufficient to raise the legal question about application of that litigation privilege — did Dr. Seres's statements about possible Social Security fraud and drug diversion, which seem defamatory on their face, "have some relation to the proceeding" that provided Griffin & Smith and TIG absolute privilege protection when presenting those specific statements to the Board?

TIG understood the Cornelisons were challenging the superior court's absolute privilege ruling, as a section of TIG's appellee's brief was devoted to that

---

[3]    *See Nizinski*, 517 P.2d at 756 (stating that question of pertinence to proceeding is legal, not factual, issue).

challenge. TIG argued that *anything* it submitted in the workers' compensation proceeding was absolutely privileged. Its fallback position was that any statements not absolutely privileged were not false or defamatory or did not cause quantifiable damages, issues the superior court never addressed. But TIG studiously ignored the Cornelisons' argument that the introduction into the workers' compensation proceedings of Dr. Seres's statements about Social Security fraud and drug diversion had no real pertinence or connection to those proceedings.

Griffin & Smith also understood the Cornelisons were challenging the superior court's ruling on absolute privilege, as a section of its appellee's brief was devoted to that challenge. Griffin & Smith argued that Alaska follows the rule of absolute litigation privilege, that the Cornelisons' allegations of defamation arose from actions within a legal proceeding, and therefore it had been entitled to judgment on the pleadings.[4] But Griffin & Smith also studiously ignored the Cornelisons' argument that the introduction into the workers' compensation proceedings of Dr. Seres's statements about Social Security fraud and drug diversion had no real pertinence or connection to those proceedings.

In my view the Cornelisons have fairly raised a question of law that this court should recognize, especially in light of their pro se status. We could resolve this matter ourselves with an independent review of the record; arguments by TIG and Griffin & Smith would have been helpful, but they declined to make any. However the matter also seems intertwined with others being remanded to the superior court, such as the defamation claim against Dr. Seres and the statutory fraud claim against TIG and

---

[4] It is unclear to me how the superior court resolved this claim by way of an Alaska Civil Rule 12(c) motion for judgment on the pleadings when by its own admission it was looking at facts outside the pleadings in making its ruling.

Griffin & Smith.  I therefore would remand this issue to the superior court, along with those other issues, for its consideration in the first instance.