*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID GRIFFITH, | ) | |
| | ) | Supreme Court No. S-18041 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-19-04477 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ROGER HEMPHILL and DONALD DAVIS, | ) | |
| | ) | No. 7634 – December 16, 2022 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: David Griffith, pro se, Eagle River, Appellant. Kendra E. Bowman, Jermain, Dunnagan & Owens, Anchorage, for Appellees.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

BORGHESAN, Justice.

## I.     INTRODUCTION

A landlord leased a commercial building to two tenants who operated an automotive repair business on the property. The landlord refused to adhere to provisions in the lease requiring him to maintain and repair the property and to cover the property insurance, so the tenants paid for the property insurance and for substantial repairs that

were needed after the roof failed.  The landlord initiated a forcible entry and detainer action after the tenants held over at the end of the lease term; the tenants counterclaimed for breach of contract.  After trial, the superior court ruled that the landlord had breached the lease and awarded the tenants damages.  The superior court also awarded the tenants attorney's fees.

The landowner appeals, arguing that (1) the tenants did not file their counterclaim within the applicable statute of limitations, (2) the evidence did not support the damages award, and (3) the attorney's fees award was an abuse of discretion.  Seeing no error, we affirm the superior court's decisions.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In November 2008 David Griffith entered into an agreement with Roger Hemphill and Donald Davis to lease a commercial building that Griffith owned.  In a separate agreement, Griffith sold his automotive repair business to Hemphill and Davis, who operated the business out of the leased property.

The lease was for a ten-year term.  Among other things, the lease required Griffith to "maintain a policy of fire and other casualty insurance upon the premises" and to "maintain the premises . . . in reasonable good order and condition."  It gave Hemphill and Davis the option, at the end of the lease term, to hold over under specified terms or to purchase the property for fair market value.

In 2010 the roof of the building began leaking water, damaging Hemphill and Davis's tire balancer.  Hemphill and Davis asked Griffith to repair the roof and pay for the balancer.  Griffith refused to pay for the roof repair or balancer replacement and told them the roof only needed a patch, which they could perform themselves.  The record does not indicate whether Hemphill and Davis performed this repair, but their attorney represented at trial that they did, and Griffith did not contradict that assertion.

In 2016 Hemphill and Davis discovered that the roof had failed in several places due to water accumulation; two scuppers[1] had not been maintained, causing a clog. In either August or November of that year, the parties met to discuss the damage and repairs. At that meeting Hemphill and Davis maintained that the lease required Griffith to repair the damage. Griffith refused to repair the damage and claimed the lease was "fraudulent," threatening Hemphill and Davis with eviction, revocation of their option to purchase, and a lawsuit. Hemphill and Davis eventually repaired the damage themselves.

In November 2018 — the last month of their lease term — Hemphill and Davis sent written notice to Griffith attempting to exercise their option to purchase. Griffith did not sell the property to Hemphill and Davis. After the lease term expired, Hemphill and Davis held over on the property. Griffith then brought a forcible entry and detainer (FED) action against Hemphill and Davis in district court in January 2019. Hemphill and Davis ended their holdover in April 2019 and vacated the property.

## B.    Proceedings

### 1.    Pleadings and offer of judgment

Griffith's complaint sought to evict Hemphill and Davis from the property and claimed $25,000 in damages due to the roof failure. In February 2019 Hemphill and Davis answered the complaint, alleging that Griffith had breached the lease by refusing to maintain and repair the property and by refusing to honor their option to purchase. Hemphill and Davis counterclaimed for over $100,000 in damages, pursuing claims of breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and specific performance. The case was then removed to superior court.

---

[1]    A "scupper" is an opening that permits water to run off from a roof. *Scupper*, WEBSTER'S NEW WORLD DICTIONARY (2nd coll. ed. 1976).

In April 2019 — less than a month after the parties agreed to exchange initial disclosures[2] — Hemphill and Davis served Griffith with an offer of judgment pursuant to Alaska Civil Rule 68.[3] Hemphill and Davis offered judgment to be entered in their favor in the amount of $20,000, "inclusive of costs, attorney's fees, and interest, and in complete satisfaction of all claims asserted by all parties." Griffith did not respond to the offer of judgment.

Griffith amended his complaint for FED to add three other claims: fraudulent misrepresentation, promissory estoppel, and breach of implied-in-fact contract. Griffith alleged that the written lease was fraudulent and that the parties had instead negotiated and followed an oral implied-in-fact "triple-net lease" requiring Hemphill and Davis to maintain the property and to pay for Griffith's property taxes and insurance.[4]

---

[2]    *See* Alaska R. Civ. P. 26(a)(1) (requiring parties to provide certain information to other parties "without awaiting a discovery request").

[3]    *See* Alaska R. Civ. P. 68(a) ("At any time more than 10 days before the trial begins, either the party making a claim or the party defending against a claim may serve upon the adverse party an offer to allow judgment to be entered in complete satisfaction of the claim for the money or property or to the effect specified in the offer, with costs then accrued. The offer may not be revoked in the 10 day period following service of the offer. If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service, and the clerk shall enter judgment."); Alaska R. Civ. P. 68(b)(1) ("[I]f the offer was served no later than 60 days after the date established in the pretrial order for initial disclosures required by Civil Rule 26, the offeree shall pay 75 percent of the offeror's reasonable actual attorney's fees.").

[4]    *See Lease: net-net-net lease*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining triple-net lease as "[a] lease in which the lessee pays all the expenses, including mortgage interest and amortization, leaving the lessor with an amount free of all claims").

### 2. Summary judgment order

Griffith moved for summary judgment on Hemphill and Davis's specific performance counterclaim. Hemphill and Davis moved for voluntary dismissal of that claim, which the superior court granted. Griffith proceeded to move for summary judgment on Hemphill and Davis's breach of contract counterclaim, asserting a statute of limitations defense. Hemphill and Davis then moved for summary judgment on their counterclaims and on Griffith's claims.

In June 2020 the superior court issued an order on the parties' cross-motions for summary judgment. The court summarized its rulings as follows:

> (1) The alleged oral [triple-net] agreement is invalid under the Statute of Frauds.[5]
>
> (2) The 2008 written contract is enforceable but there are genuine issues of material fact as to whether certain key terms of the contract were modified [by] the parties' course of dealing or subsequent agreements . . . .
>
> (3) There is an issue of fact as to whether the defendants waived the provision in the signed contract that requires the lessor to pay for maintenance and repairs.
>
> (4) There is an issue of fact as to whether the defendants attempted to perform the option pursuant to the contract terms.
>
> (5) There is an issue of fact as to whether the defendants were capable of exercising the option to purchase.

The court's order did not contain a ruling on Griffith's statute of limitations defense.

---

[5] Alaska's statute of frauds provides that a lease agreement for a period longer than one year is not enforceable unless the agreement is in writing. AS 09.25.011(a)(6).

### 3. Superior court's findings and conclusions

After a two-day bench trial at which Hemphill, Davis, and Griffith each testified, the superior court entered its findings and conclusions on the record. The court made findings pertaining to the parties' credibility, including that "the more reliable reporters in this case, with respect to the facts and circumstances and transactions, were Mr. Davis and Mr. Hemphill." The court added that Hemphill provided "the most accurate account" of the late 2016 meeting between the parties regarding repairs after the roof failure.

The court rejected Griffith's argument that an oral triple-net lease modified the written contract, reiterating its ruling on summary judgment that any oral agreement between the parties was unenforceable due to the statute of frauds. The court similarly rejected Griffith's argument that the parties followed an implied-in-fact triple-net lease after signing the written contract, explaining that the parties' actions were generally consistent with the terms of the written contract with respect to allocating costs. The court also ruled that the affirmative defenses of waiver and promissory estoppel did not bar Hemphill and Davis's breach of contract counterclaim, because waiver had not been "expressed in clear and uncertain terms" and because Griffith had not detrimentally relied on any promise made by Hemphill and Davis.

The court determined that the lease required Griffith to pay for property insurance and found, based on Hemphill's testimony, that Hemphill and Davis could recover the $1,173 they paid for that insurance in 2016 and the $243 they paid in 2017. The court also determined that the lease required Griffith to maintain the property and that he was responsible for the repair costs associated with the 2016 roof failure. The court found, again based on Hemphill's testimony, that the roof failure had forced Hemphill and Davis to incur $6,500 in costs to repair an exterior wall and $11,450 to paint and perform miscellaneous repairs. Citing the statute of limitations applicable to

contract actions,[6] the court limited damages to claims accruing within the three years prior to when Hemphill and Davis filed their counterclaims. The court awarded Hemphill and Davis a total of $19,330 in damages.[7]

The court dismissed Hemphill and Davis's breach of contract claim involving the option to purchase, finding that they had not properly exercised the option. Likewise, the court dismissed Hemphill and Davis's claim for breach of the covenant of good faith and fair dealing. The court also dismissed Griffith's FED claim, explaining that Hemphill and Davis "had a right to remain holdover tenants for a limited reasonable period of time" and had not abused that right. The court also dismissed Griffith's unjust enrichment claim.

### 4. Award of attorney's fees

The superior court awarded $59,604.75 in attorney's fees to Hemphill and Davis under Civil Rule 68. The court explained that the award was based on Griffith's failure to "beat" Hemphill and Davis's Rule 68 offer of judgment.[8] The court entered

---

[6] AS 09.10.053.

[7] The superior court found at trial that Hemphill and Davis incurred $19,366 in damages but awarded them $19,330 in its order entering final judgment. The parties do not raise this minor discrepancy in their briefing, so it is waived and we do not address it.

[8] Alaska R. Civ. P. 68(b) provides that "[i]f the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer [of judgment], . . . the offeree, whether the party making the claim or defending against the claim, shall pay all costs as allowed under the Civil Rules and shall pay reasonable actual attorney's fees incurred by the offeror from the date the offer was made." The fees owed are calculated according to a schedule of percentages that varies according to the point in litigation at which the offer was made.

final judgment in favor of Hemphill and Davis in the amount of $85,895.62, accounting for the damages award, prejudgment interest on the damages award, attorney's fees, and costs.

Griffith moved for reconsideration of the court's findings and conclusions, which the superior court denied. Griffith appeals.

## III. DISCUSSION

### A. The Superior Court Did Not Err By Ruling That Hemphill And Davis's Breach Of Contract Claim Was Timely.

The superior court ruled that Griffith had breached the lease by failing to pay for property insurance and by failing to maintain and repair the property. The court awarded damages only for claims that had accrued within the three-year statute of limitations for contract actions:[9] (1) the property insurance premiums that Hemphill and Davis paid in 2016 and 2017 and (2) damages flowing from the 2016 roof failure.

Griffith appeals the denial of his statute of limitations defense.[10] He argues

---

[9] AS 09.10.053 ("Unless the action is commenced within three years, a person may not bring an action upon a contract or liability, express or implied, except as provided in AS 09.10.040, or as otherwise provided by law, or, except if the provisions of this section are waived by contract."); *see also Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1272 (Alaska 2013).

[10] Griffith makes two procedural arguments related to this point. First, he argues that the superior court "ignored" an earlier order in which Griffith claims the court "barred/dismissed [Hemphill and Davis's] claim of breach of contract based on the statute of limitations." But the order Griffith references did not address the statute of limitations, let alone rule in his favor on that issue. Instead, that order provided that the alleged oral triple-net lease was invalid under the Statute of Frauds and that the written lease was enforceable. Second, Griffith argues that when the court rejected his statute of limitations defense at trial, it claimed to have already issued an order denying summary judgment on that ground, but never actually did so. Although the appellate record and CourtView support Griffith's assertion that the superior court did not issue

(continued...)

that Hemphill and Davis's February 2019 counterclaim for damages based on Griffith's failure to maintain and repair the property was untimely filed. Griffith maintains that the limitations period for this claim began running in 2010, when he refused to repair the leaking roof or to compensate Hemphill and Davis for the resulting damage to their tire balancer. We review de novo the legal standard used to determine the date on which a claim accrues and whether the applicable statute of limitations bars the claim.[11]

Regardless of whether Griffith breached the lease's covenant to maintain and repair the premises in 2010 when the roof leaked, a distinct cause of action accrued when clogged scuppers led the roof to fail in an unrelated incident six years later. Contracts can contain promises that, although phrased as a single obligation, "provide for more than one performance by a promisor."[12] In this event "the nonperformance of each thing promised is a separate breach of contract" giving rise to a separate cause of action.[13] Griffith's promise to "maintain the premises" was such a promise. Each time

---

[10]     (...continued)
the order it referenced, this apparent procedural mistake is not relevant to our de novo review of whether the statute of limitations bars Hemphill and Davis's counterclaim.

[11]     *Taffe v. First Nat'l Bank of Alaska*, 450 P.3d 239, 243 n.14 (Alaska 2019) (quoting *Gefre*, 306 P.3d at 1271).

[12]     23 WILLISTON ON CONTRACTS § 63:13 (4th ed. May 2022 update) (listing covenant to repair in a lease as an example of a "single" promise that can effectively be multiple promises giving rise to multiple claims for breach).

[13]     *Id.*; *see also Bibo v. Jeffrey's Rest.*, 770 P.2d 290, 294 (Alaska 1989) (holding that each excessive payment made by corporation's controlling shareholders to bookkeeping service in which controlling shareholders had majority interest was "separate wrongful act" for which plaintiffs could seek damages); *Hanson v. Kake Tribal Corp.*, 939 P.2d 1320, 1325 (Alaska 1997) (holding that separate cause of action for breach of contract accrued with each unlawful payment made by corporation to favored shareholders, rejecting corporation's argument that single cause of action accrues "when
(continued...)

the building needed a repair to keep the premises in good working order, Griffith was required to perform the repair. Each time he failed to perform such a repair, he breached the contract anew, giving rise to a new cause of action.[14] Griffith's failure to maintain the scuppers or repair the resulting roof damage in 2016 was therefore a new breach giving rise to a new claim even if he had previously breached his repair obligations in 2010.

Griffith's statute of limitations defense rested solely on the theory that Hemphill and Davis's claim arose in 2010. He never argued, either in the superior court or on appeal, that their claim was untimely because they were on notice of the 2016 roof failure or its cause more than three years before filing suit in 2019.[15] Therefore Griffith has waived any such argument,[16] and we affirm the superior court's ruling that Hemphill

---

[13]    (...continued)
the plaintiffs could have first maintained the action to a successful conclusion").

[14]    Although Griffith does not challenge the damages attributable to his failure to maintain insurance on the property, we observe that his repeated failures to pay for property insurance are also separate breaches, with a new cause of action accruing each time Griffith failed to make the recurring payment.

[15]    *See Gefre*, 306 P.3d at 1273-74 (noting that claim generally accrues when the plaintiff "suffers the harm giving rise to it" but that when an element of the claim "is not immediately apparent" the common-law discovery rule may toll accrual of the claim); *Hitt v. J.B. Coghill, Inc.*, 641 P.2d 211, 212 (Alaska 1982) ("Reliance on a statute of limitations is ordinarily an affirmative defense which must be pleaded and proved by the defendant.").

[16]    *See Wright v. Anding*, 390 P.3d 1162, 1175 (Alaska 2017) ("[A]s a general matter, issues not briefed . . . are considered waived." (quoting *Shearer v. Mundt*, 36 P.3d 1196, 1199 (Alaska 2001))); *Alex H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 389 P.3d 35, 46-47 (Alaska 2017) ("Where a party has failed to sufficiently raise an issue [in the superior court] we generally consider that argument waived."); *see also Barbara P. v. State, Dep't of Health & Soc. Servs.*, 234 P.3d 1245,
(continued...)

-10-                                                  7634

and Davis's breach of contract claim was timely filed.[17]

**B.      The Superior Court Did Not Clearly Err By Awarding Hemphill And Davis $19,330 In Damages For Breach Of Contract.**

The superior court awarded $19,330 in damages to Hemphill and Davis, relying primarily on Hemphill's trial testimony describing the costs he and Davis incurred from the roof failure and from paying property insurance in 2016 and 2017. Griffith argues that Hemphill and Davis should have been precluded from offering this testimony and that it does not suffice to prove damages because it is not documentary evidence. Neither argument has merit.

Griffith first argues that Hemphill and Davis violated Alaska Civil Rule 26(a)(1)(G)[18] by refusing to disclose evidence supporting a $19,330 damages award. Griffith appears to contend that in light of this allegedly unjustified failure to disclose, the superior court should not have permitted Hemphill to testify on damages or awarded Hemphill and Davis damages based on this testimony.

Griffith waived this argument by retracting it in the superior court. The

---

[16]      (...continued)
1258 (Alaska 2010) (holding that father's failure to challenge ruling on appeal that child was in need of aid based on continuing drug addiction was "sufficient . . . to affirm the ruling").

[17]      Although the record does not indicate precisely when Hemphill and Davis paid the 2016 and 2017 property insurance premiums, we affirm the superior court's ruling that these damages fall within the three-year statute of limitations because, as noted above, Griffith does not challenge this aspect of the damages award.

[18]      Alaska R. Civ. P. 26(a)(1)(G) requires a party to describe in its initial disclosures "all categories of damages claimed . . . and a computation of each category of special damages, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such claims are based, including materials bearing on the nature and extent of injuries suffered."

remedy for an unjustified failure to disclose information required by Rule 26 is exclusion of that information as evidence.[19]  Griffith filed a pretrial motion in limine to exclude certain evidence that he alleged Hemphill and Davis improperly withheld.  But Griffith later asked to withdraw this motion, explaining that he wished to use some of this evidence in presenting his case.  The superior court granted Griffith's request to withdraw his motion to exclude; it does not appear that Griffith ever renewed the motion. Griffith cannot now renew this argument on appeal.[20]

Griffith next takes issue with the lack of "documentation" proving breach of contract damages.  He appears to argue that Hemphill's oral testimony was insufficient to prove the amount of these damages.  Whether evidence is specific enough to support an economic damages award is a question of law that we review de novo.[21]  We review the superior court's damages award for clear error, which exists "when[,] 'after a thorough review of the record, we come to a definite and firm conviction that a mistake

---

[19]     Alaska R. Civ. P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rules 26(a), 26(e)(1), or 26.1(b) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.").

[20]     *Cf. Wendt v. Bank of N.Y. Mellon Tr. Co.*, 487 P.3d 235, 240 (Alaska 2021) ("Arguments raised for the first time on appeal are generally waived . . . .") (citing *Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019)); *Taylor v. Johnston*, 985 P.2d 460, 467 (Alaska 1999) ("To preserve a claim based on a superior court's failure to rule on a motion, a party must make every effort to request and obtain a ruling before proceeding to trial."); *Roderer v. Dash*, 233 P.3d 1101, 1107 n.13 (Alaska 2010) (holding that appellant did not waive argument despite attempting to withdraw motion for summary judgment and failing to renew it because superior court did not grant withdrawal of motion and appellant later renewed "the underlying argument" in motion for judgment notwithstanding the verdict).

[21]     *See Cent. Bering Sea Fishermen's Ass'n v. Anderson*, 54 P.3d 271, 277 (Alaska 2002).

has been made.' "[22]

Hemphill's testimony supported the amount of the award. Hemphill — who was familiar with the business's finances — testified that he and Davis spent $6,500 to repair the wall that had suffered water damage from the roof failure. Hemphill also testified that he and Davis spent $11,450 in painting costs to finish those repairs, itemizing the costs of wood trim, supplies, paint, a paint sprayer, scaffolding, and labor. Finally, Hemphill testified that he and Davis paid $1,173 for property insurance in 2016 and $242 in 2017. Griffith did not present any evidence refuting the amount of these damages, choosing instead to focus on Hemphill and Davis's failure to show receipts proving the expenses they incurred.

Plaintiffs in a contract suit are not required to present documentary evidence to substantiate their damages. Rather, the testimony of a single witness is enough to give the fact-finder a "reasonable basis upon which to calculate the amount of damages . . . '[o]nce actual damages are shown and there is a reasonable basis for computing an award.' "[23] Hemphill's specific testimony, which the superior court found credible, was a legally sufficient basis for the superior court to compute the damages award. Giving due deference to the superior court's "opportunity to judge the [witnesses'] credibility," as we must when findings are largely dependent on oral

---

[22]     *Burton v. Fountainhead Dev., Inc.*, 393 P.3d 387, 393 (Alaska 2017) (quoting *Laybourn v. City of Wasilla*, 362 P.3d 447, 453 (Alaska 2015)), *as amended on reh'g* (May 9, 2017).

[23]     *Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 154 n.10 (Alaska 1992) (quoting *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 224 (Alaska 1978), *disapproved on other grounds by Native Alaskan Reclamation & Pest Control, Inc. v. United Bank Alaska*, 685 P.2d 1211 (Alaska 1984)).

testimony, we conclude the amount of damages awarded was not clearly erroneous.[24]

### C. The Superior Court Did Not Err By Awarding Hemphill And Davis Attorney's Fees Under Civil Rule 68.

The superior court granted Hemphill and Davis's motion for $59,604.75 in attorney's fees, representing 75% of their claimed total reasonable attorney's fees. The court explained that Griffith failed to "beat" Hemphill and Davis's Rule 68 offer of judgment totaling $20,000, inclusive of costs and interest. The court also determined that Hemphill and Davis were the prevailing parties.[25] The court entered final judgment in favor of Hemphill and Davis in the amount of $85,895.62.

Griffith takes issue with the superior court's prevailing party determination, arguing that the superior court abused its discretion by determining that Hemphill and Davis were the prevailing parties and arguing that Griffith, instead, is the prevailing party. But Griffith's focus on prevailing party status is beside the point. Although the superior court determined that Hemphill and Davis were the prevailing parties for purposes of Alaska Civil Rule 82, the court ultimately awarded Hemphill and Davis attorney's fees under Rule 68, not Rule 82. Because prevailing party status did not influence the superior court's Rule 68 attorney's fees award,[26] we need not review the superior court's prevailing party determination.

---

[24] *See Kilmer v. Dillingham City Sch. Dist.*, 932 P.2d 757, 764 (Alaska 1997) ("When the trial judge's decision is dependent largely upon oral testimony of the witnesses seen and heard by the court, this court must give due regard to the trial judge's opportunity to judge the credibility of those witnesses.").

[25] *See* Alaska R. Civ. P. 82(a) ("Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.").

[26] *See* Alaska R. Civ. P. 68(c) ("A party who receives attorney's fees under this rule may not also receive attorney's fees under Civil Rule 82.").

The superior court did not err by awarding Hemphill and Davis attorney's fees under Rule 68 because Griffith did not beat their $20,000 offer of judgment.[27] "When a party declines an offer of judgment and then fares worse at trial than under the offer, Rule 68 allows the offering party to claim post-offer costs and attorney's fees."[28] "To determine whether an offeree beat an offer of judgment, courts . . . [should] begin with the jury award and add prejudgment interest and costs incurred prior to the offer of judgment. This sum is compared with the offer of judgment."[29] If the sum is "at least 5 percent less favorable to the offeree than the offer," the offeree is on the hook for Rule 68 attorney's fees.[30]

One of Hemphill and Davis's attorneys submitted an affidavit with their motion for attorney's fees which calculated the damages award plus prejudgment interest and costs at $21,647.94. Griffith did not challenge these calculations in the superior court. Based on the unchallenged calculations of Hemphill and Davis's attorney, the total judgement exceeded the offer of judgement by more than 5%. Therefore Rule 68(b) required the superior court to grant Hemphill and Davis's motion for attorney's fees and costs. Because Hemphill and Davis served their offer within 60 days of the parties' exchange of initial disclosures, their motion properly requested — and the superior court properly awarded — 75% of their total reasonable attorney's fees incurred after the date

---

[27]    We review de novo whether a party beat a Rule 68 offer of judgment. *See Whittenton v. Peter Pan Seafoods, Inc.*, 421 P.3d 1133, 1135-36, 1138 (Alaska 2017); *Andrus v. Lena*, 975 P.2d 54, 57-58 (Alaska 1999).

[28]    *Thomann v. Fouse*, 93 P.3d 1048, 1050 (Alaska 2004).

[29]    *Whittenton*, 421 P.3d at 1138 (footnote omitted).

[30]    Alaska R. Civ. P. 68(b).

of the offer.[31]  We see no error in this award of attorney's fees.

## IV.    CONCLUSION

We AFFIRM the judgment of the superior court.

---

[31]    *See* Alaska R. Civ. P. 68(b)(1).