*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID GRIFFITH, | ) | |
| | ) | Supreme Court No. S-18804 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-23-04423 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ROGER HEMPHILL, DONALD | ) | |
| DAVIS, and JDO LAW, P.C., | ) | No. 7761 – April 11, 2025 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: David Griffith, pro se, Eagle River, Appellant. Laura L. Farley, Farley & Graves, P.C., Anchorage, for Appellee JDO Law, P.C. Notice of nonparticipation filed by Robert D. Stone, Stone Law, LLC, Anchorage, for Appellees Roger Hemphill and Donald Davis.

Before: Maassen, Chief Justice, and Borghesan, Henderson, and Pate, Justices. [Carney, Justice, not participating.]

BORGHESAN, Justice.

## I.    INTRODUCTION

In a prior appeal we affirmed a damages award in favor of two commercial tenants against their former landlord.[1]  The former landlord then sued the tenants and

---

[1]    *Griffith v. Hemphill*, 521 P.3d 584 (Alaska 2022).

their law firm, alleging the torts of negligent infliction of emotional distress (NIED), malicious prosecution, and abuse of process. After taking judicial notice of the prior legal proceedings, the superior court granted the defendants' motion to dismiss the landlord's claims for failure to state a claim on which relief may be granted. The landlord appeals.

We affirm the superior court's decision. The superior court followed the proper procedure for taking judicial notice, and in doing so it was not required to convert the motion to dismiss to a motion for summary judgment. On the merits, the landlord's NIED claim fails because it is based on the tenants' claims and statements made in the prior proceedings, which are privileged and cannot serve as the basis for liability. The landlord's malicious prosecution claim fails because the prior proceedings did not terminate in his favor. And the abuse of process claim fails because the landlord did not allege a necessary element: an ulterior purpose separate from the process.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Because this is an appeal of an order dismissing the complaint for failure to state a claim, the following facts are drawn from the complaint and assumed, for purposes of this appeal, to be true.[2]

Starting in December 2008 Roger Hemphill and Donald Davis leased a commercial building from David Griffith for a ten-year term. The lease provisions included an option, at the end of the lease term, for Hemphill and Davis to purchase the property at a value set by third-party appraisal. In 2016 and 2017 Hemphill and Davis informed Griffith that they would not exercise the option to purchase. But in 2018 Hemphill and Davis attempted to exercise the option. After the lease term expired in November 2018, Hemphill and Davis held over on the property.

---

[2]    *Robinson v. Alaska Hous. Fin. Corp.*, 442 P.3d 763, 768 (Alaska 2019) (quoting *Patterson v. Walker*, 429 P.3d 829, 831 (Alaska 2018)).

## B.    Prior Proceedings

Griffith then brought a forcible entry and detainer (FED) action against Hemphill and Davis.  This FED action culminated in an appeal to us, and we take judicial notice of the existence and outcome of those prior proceedings.[3]

Griffith sought to evict Hemphill and Davis from the property and claimed $25,000 in damages.[4]  Hemphill and Davis counterclaimed for over $100,000 in damages, pursuing claims of breach of contract related to the option to purchase and for failure to maintain the property, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and specific performance.[5]  Hemphill and Davis later moved to voluntarily dismiss their specific performance counterclaim, and the superior court granted that motion.[6]

After trial the superior court dismissed Griffith's original FED claim, finding that Hemphill and Davis "had a right to remain holdover tenants for a limited reasonable period of time" and had not abused that right.[7]  The court dismissed Hemphill and Davis' breach of contract counterclaim related to the option to purchase for failure to properly exercise the option, as well as their counterclaims for unjust enrichment and good faith and fair dealing.[8]

---

[3]    Alaska R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").  As we explain further below, the existence and outcome of a prior legal proceeding are facts that are properly subject to judicial notice.

[4]    *Griffith*, 521 P.3d at 586.

[5]    *Id.*

[6]    *Id.* at 587.

[7]    *Id.* at 588.

[8]    *Id.*

The superior court entered judgment in favor of Hemphill and Davis on their breach of contract counterclaim related to the failure to maintain the property, awarding them a total of $19,330 in damages.[9] We affirmed this decision.[10]

## C. Proceedings In This Case

In January 2023 Griffith filed a new action for damages against Hemphill, Davis, and their attorney, Jermain Dunnagan & Owens P.C. (JDO). Griffith asserted claims of NIED, malicious prosecution, and abuse of process based on what happened in the prior proceedings.

In support of the NIED claim, Griffith alleged that "[t]he defendants were negligent in their duty to abide by the terms of the option contract" and caused him emotional distress by making claims against him based on the option contract, as well as "misleading," "lying," engaging in "fabrication/spoliation of evidence," and violating various court rules and rules of professional conduct.

In support of the malicious prosecution claim, Griffith alleged that "both proceedings, specific performance and breach of contract, terminated in [his] favor." He alleged that "there was no probable cause for the proceedings as the defendants could not exercise the option contract" and that the primary purpose of the proceedings was "malice, retaliation and intentional delay, and not the enforcement of the contract."

In support of the abuse of process claim, Griffith alleged that "[t]he defendants had multiple ulterior purposes" such as "intentionally delaying the F.E.D. while looking for other properties to lease" and causing Griffith "substantial damage." He alleged that they engaged in tortious misconduct by "intentional delay of the F.E.D., conducting bogus depositions and making a minimal offer of judgment while simultaneously requesting a continuance to perform discovery."

---

[9]    *Id.*

[10]    *Id.* at 588-92.

JDO moved to dismiss the suit for failure to state a claim.[11] Hemphill and Davis joined this motion. After Griffith opposed the motion, the superior court issued an order explaining that it would treat the motion to dismiss as a motion for summary judgment because the court intended to consider material outside the pleadings[12] — namely, the prior proceedings involving the parties. The court gave the parties two weeks to respond. Griffith timely filed an affidavit and four trial exhibits from the underlying litigation.[13]

The superior court granted the motion to dismiss Griffith's claims against Hemphill, Davis, and JDO. The court took judicial notice of "other court proceedings related to this case, namely *Griffith v. Hemphill*, No. S-18041" — our decision in the prior appeal. As a threshold matter, the court explained that it had "mistakenly indicated that it would convert [the] motion to dismiss into a motion for summary judgment." The court went on to explain that taking judicial notice of facts outside the pleadings did not require converting the motion to a summary judgment motion. It therefore struck Griffith's opposition to summary judgment but "accept[ed] his affidavit to the extent it disputes the facts stated in *Griffith v. Hemphill*, No. S-18041."

Proceeding to the merits of Griffith's three claims, the superior court first ruled that Griffith's NIED claim was barred by the absolute privilege for statements made in litigation. It also ruled that Griffith failed to state a claim for malicious prosecution because the prior proceedings were not terminated entirely in his favor. It

---

[11] *See* Alaska R. Civ. P. 12(b)(6).

[12] *See* Alaska R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

[13] Griffith also filed an opposition to summary judgment reiterating the same arguments from his opposition to Hemphill, Davis, and JDO's motion to dismiss.

observed that Hemphill and Davis had prevailed on some of their counterclaims in the prior proceedings. Noting that Alaska law did not establish whether counterclaims should be considered in evaluating the outcome of the prior proceedings, the court cited California precedent holding that "favorable termination requires favorable resolution of the underlying action in its entirety, not merely a single cause of action."[14] Finally, it ruled that Griffith failed to state a claim for abuse of process. It reasoned that a necessary element of an abuse of process claim is an act beyond those taken in the course of litigation, but Griffith's complaint relied solely on "actions taken in the course of litigation that cannot be the proper bases for his abuse of process claim."

The court therefore dismissed all three of Griffith's claims, but gave Griffith two weeks to amend his complaint before the order would take effect. Griffith moved for clarification of why the court did not convert the defendants' motion to dismiss to one for summary judgment. The court responded, explaining that conversion is not required when taking judicial notice of other judicial proceedings, but stating that it did consider Griffith's position on those proceedings.[15]

Griffith twice moved for reconsideration, which the superior court denied. Griffith appeals the dismissal of his claims.

---

[14] The superior court cited *Citizens of Human., LLC v. Ramirez*, 277 Cal. Rptr. 3d 501, 510 (Cal. App. 2021).

[15] The superior court cited *Pedersen v. Blythe*, 292 P.3d 182, 185 (Alaska 2012) (noting that court "may consider materials outside the pleadings on a motion to dismiss if those materials are subject to 'strict judicial notice' " and that court proceedings are subject to "strict judicial notice").

## III. STANDARD OF REVIEW

"We review a superior court's 'grant of a motion to dismiss a complaint for failure to state a claim under Alaska Civil Rule 12(b)(6) . . . de novo.' "[16] "In reviewing a Rule 12(b)(6) dismissal, we liberally construe the complaint and treat all factual allegations in the complaint as true."[17] "[W]e also 'liberally' construe the claims of self-represented litigants like [Griffith]."[18] Civil Rule 12(b)(6) dismissals "should be granted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.' "[19]

"We exercise our independent judgment when reviewing issues of law, 'adopt[ing] the rule of law that is most persuasive in light of precedent, reason, and policy.' "[20] "We may affirm the superior court on any basis appearing in the record."[21]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Declining To Convert The Motion To Dismiss To A Motion For Summary Judgment.

The threshold question is whether the superior court erred by taking judicial notice of the prior proceedings involving the litigants without converting Hemphill, Davis, and JDO's motion to dismiss into a motion for summary judgment. Griffith argues that the court erred by not converting the motion and that he was "left

---

[16] *Robinson v. Alaska Hous. Fin. Corp.*, 442 P.3d 763, 768 (Alaska 2019) (quoting *Clemensen v. Providence Alaska Med. Ctr.*, 203 P.3d 1148, 1151 (Alaska 2009)).

[17] *Id.* (quoting *Patterson v. Walker*, 429 P.3d 829, 831 (Alaska 2018)).

[18] *Id.*

[19] *Id.* (quoting *Clemensen*, 203 P.3d at 1151).

[20] *Lawson v. Helmer*, 77 P.3d 724, 726 (Alaska 2003) (quoting *Robles v. Shoreside Petroleum, Inc.*, 29 P.3d 838, 841 (Alaska 2001)).

[21] *Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 281 (Alaska 2012) (quoting *Far N. Sanitation, Inc. v. Alaska Pub. Utils. Comm'n*, 825 P.2d 867, 869 n. 2 (Alaska 1992)).

with no response to the court considering, and not excluding, matters outside the pleadings." We see no error in the way the proceedings unfolded. The superior court was permitted to take judicial notice of prior court proceedings so long as it gave the parties sufficient notice of its intent to do so.

When considering a motion to dismiss, a court "generally 'do[es] not consider materials outside the complaint and its attachments.' "[22] If the court intends to consider material beyond the pleadings when deciding a motion to dismiss under Civil Rule 12(b)(6), "the motion shall be treated as one for summary judgment,"[23] and the court must give the parties "reasonable opportunity to present all material made pertinent."[24]

But there is an exception: "courts may consider materials outside the pleadings on a motion to dismiss if those materials are subject to 'strict judicial notice.' "[25] When doing so "the court must give notice to the opposing party of its intent to take judicial notice and afford him an opportunity to dispute the facts judicially noticed."[26] That is what the court did here.

The facts the superior court described were subject to judicial notice. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within this state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[27] That was the

---

**22** *Sagoonick v. State*, 503 P.3d 777, 791 (Alaska 2022) (quoting *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012)).

**23** Alaska R. Civ. P. 12(b).

**24** *Id.*; *see also Pedersen*, 292 P.3d at 184-85.

**25** *Pedersen*, 292 P.3d at 185.

**26** *Id.* (quoting *Schwartz v. Commonwealth Land Title Ins. Co.*, 374 F. Supp. 564, 579 (E.D. Pa. 1974), *supplemented*, 384 F. Supp. 302 (E.D. Pa. 1974)) (internal quotation marks omitted).

**27** Alaska R. Evid. 201(b).

case here. The court cited our opinion in *Griffith v. Hemphill*[28] when describing the results of the prior proceedings. In particular, it took judicial notice of the fact that Hemphill and Davis did not prevail on counterclaims related to the option to purchase but did prevail on other counterclaims for damages. Matters subject to strict judicial notice include "matters of public record (including other court proceedings), and matters of common knowledge."[29] Judicial notice of court records is only proper for "facts not subject to reasonable dispute" like "facts that a prior suit was filed, who the parties were," and, in this instance, the outcome of prior proceedings.[30] It was therefore proper for the superior court to take judicial notice of the claims asserted in the prior litigation and how those claims were resolved.

The superior court also followed the correct procedure when taking judicial notice. It gave Griffith notice of its intent to consider the underlying proceedings and gave him time to respond. Griffith timely filed an affidavit and four trial exhibits from the underlying litigation. And the court stated in its decision that it "accepts [Griffith's] affidavit to the extent it disputes the facts stated in *Griffith v. Hemphill*, No. S-18041." The court also stated in a later clarification that it "considered

---

[28]    521 P.3d 584 (Alaska 2022).

[29]    *Pedersen*, 292 P.3d at 185; *accord Forrer v. State*, 471 P.3d 569, 584 (Alaska 2020); *see also Nizinski v. Currington*, 517 P.2d 754, 756 (Alaska 1974) (affirming that superior court properly considered matters of public record — affidavits from related lawsuit — on motion to dismiss).

[30]    *F.T. v. State*, 862 P.2d 857, 863-64 (Alaska 1993). "Courts are far more circumspect about taking judicial notice of the facts alleged in court records." *Id.* Other courts have similarly acknowledged that it is proper to "take judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)).

the information that Mr. Griffith submitted regarding the prior proceedings," asserting that "his position as to [those] proceedings [had] been taken into consideration."

Because the results of the prior litigation were facts susceptible to judicial notice, and the court followed the procedures required for taking judicial notice, it did not err by declining to convert the motion to dismiss to a motion for summary judgment.

### B. The Superior Court Did Not Err In Dismissing Griffith's NIED Claim Because Litigation Conduct Cannot Create Liability For NIED.

The superior court dismissed Griffith's NIED claim because it concluded that the allegations underlying his claim involved privileged litigation conduct. Griffith argues that the litigation privilege does not apply to "the intentional and malicious initiation and continuation of a meritless proceeding."

Our precedent indicates otherwise. In *Meidinger v. Koniag, Inc.*, we affirmed dismissal of an IIED claim by corporate shareholders against a corporation, reasoning "to the extent that the IIED claim is based on [the corporation's] lawsuit against the [shareholders], filing that lawsuit is privileged and cannot be the basis of IIED liability." [31] We cited with approval a Texas decision holding that "the institution and prosecution of a civil suit afford no cause of action for damages against the party suing except in cases of malicious prosecution or abuse of process."[32] If filing a lawsuit cannot be the basis for *intentional* infliction of emotional distress because filing a lawsuit is privileged conduct, it should not be the basis for *negligent* infliction of emotional distress either.[33] So an NIED claim cannot be based on Hemphill, Davis, and JDO's filing and prosecution of a civil suit.

---

[31]     31 P.3d 77, 87 (Alaska 2001).

[32]     *Id.* at n.35 (citing *Greyhound Lines, Inc. v. Duhon*, 434 S.W.2d 406, 413 (Tex. App. 1968)).

[33]     *See Kallstrom v. United States*, 43 P.3d 162, 166 (Alaska 2002) ("[IIED] differs from NIED in that the plaintiff must show that the defendant's actions leading

Because Griffith's NIED claim is based on precisely that litigation conduct, it was properly dismissed. Griffith alleged that "[t]he defendants caused [him] to experience severe emotional distress" by filing a counterclaim based on the option contract, and that this distress was exacerbated by their "outrageous" litigation conduct and "malicious" dishonesty in connection with the litigation. These actions cannot be the basis for NIED liability.

**C.     It Was Not Error To Dismiss The Malicious Prosecution Claim Because The Prior Proceedings Did Not Terminate Favorably To Griffith.**

"A malicious prosecution cause of action seeks to redress the wrongful bringing of an action."[34]  To prevail on a claim of malicious prosecution, a plaintiff must plead and prove the "favorable termination of the original suit, lack of probable cause of the claim asserted[,] and malice on the part of the claimant."[35]  The superior court, guided by California law, ruled that Griffith's malicious prosecution claim failed because the prior proceedings were not terminated favorably to him in their entirety.[36]  As the superior court noted, "[t]he defendants . . . won a judgment that assessed damages against [Griffith]" on a breach of contract counterclaim.  And, although the superior court did not mention it, they also prevailed on Griffith's original eviction

---

to the complained of emotional distress were intentional, outrageous, or reckless and extreme.").

[34]     *Kollodge v. State*, 757 P.2d 1024, 1026 (Alaska 1988).

[35]     *Zamarello v. Yale*, 514 P.2d 228, 232 (Alaska 1973); *see also Indus. Power & Lighting Corp. v. W. Modular Corp.*, 623 P.2d 291, 298 (Alaska 1981); RESTATEMENT (SECOND) OF TORTS § 674 (AM. L. INST. 1977); W. PAGE KEETON ET AL., PROSSER AND KEETON, HANDBOOK ON THE LAW OF TORTS § 120, at 892-96 (5th ed. 1984).

[36]     *See Citizens of Human., LLC v. Ramirez*, 277 Cal. Rptr. 3d 501 (Cal. App. 2021).

claim, with the court ruling that they had a "right to remain holdover tenants for a limited reasonable period of time" and had not abused that right.[37]

On appeal Griffith appears to argue that because he prevailed on Hemphill and Davis's counterclaims related to the option to purchase, these claims were terminated in his favor and may support a claim for malicious prosecution. We have never decided whether the plaintiff must show favorable termination of *all* claims in the original suit, including counterclaims, or of only the subset of claims that the plaintiff alleges were maliciously prosecuted. Griffith does not cite any legal authority supporting his apparent position that favorable resolution of a single claim in a prior proceeding can support a malicious prosecution claim regardless of how other claims in the prior proceeding were resolved. But there is some uncertainty in the case law about whether the malicious prosecution plaintiff must show *completely* favorable termination of the prior proceedings.

As the superior court correctly observed, recent California decisions require a malicious prosecution plaintiff to show that the prior proceedings were terminated entirely in the plaintiff's favor.[38] That is, "if the underlying plaintiff succeeds on any of his or her claims, the favorable termination requirement is unsatisfied and the malicious prosecution action cannot be maintained."[39] An earlier California decision suggested that favorable termination of "separable" claims might support a subsequent claim for malicious prosecution even though other claims in the initial proceeding were not terminated favorably to the malicious prosecution

---

[37]     *Griffith v. Hemphill*, 521 P.3d 584, 588 (Alaska 2022).

[38]     *E.g. Citizens of Human., LLC*, 277 Cal. Rptr. 3d at 510-11 (quoting *Lane v. Bell*, 228 Cal. Rptr. 3d 605, 608 (Cal. App. 2018)).

[39]     *Id.* at 510 (quoting *Lane*, 228 Cal. Rptr. 3d at 608).

plaintiff.[40] Under this rule, claims are "separable" if they vindicate different "primary rights" or injuries, and could be brought as separate suits.[41] But the California Supreme Court later criticized this reasoning as dicta,[42] and subsequent appellate decisions declined to follow it.[43]

We need not decide which rule to adopt under Alaska law because Griffith cannot establish favorable termination of the prior proceedings under either of them. Even if a malicious prosecution plaintiff need only show favorable termination of a "separable" set of claims, Griffith cannot do so here. The claims for specific performance and damages based on breach of the alleged option to purchase in the lease agreement were compulsory counterclaims to Griffith's original complaint for possession and damages. They were not "separable" from the other claims that were resolved favorably to Hemphill and Davis. So the fact that Griffith prevailed on claims related to the option to purchase is not enough to establish the favorable termination element of a malicious prosecution claim.

A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," or the counterclaim is forever waived.[44] A counterclaim arises out of the same transaction or occurrence as the original claim when there is a "logical relationship" between them; "the claims share[] the same evidentiary basis," such as "time, space, origin, or motivation," "similar testimony . . . the same exhibits, and the same parties"; and "a decision on [the]

---

**40**     *Freidberg v. Cox*, 242 Cal. Rptr. 851, 855 (Cal. App. 1987) (citing *Albertson v. Raboff*, 295 P.2d 405, 410 (Cal. 1956)).

**41**     *See id.*

**42**     *Crowley v. Katleman*, 881 P.2d 1083, 1092-93 (Cal. 1994).

**43**     *Lane*, 228 Cal. Rptr. 3d at 607 (noting, ironically, that *Crowley*'s criticism of *Freidberg* and *Albertson* was itself dicta, but concluding that more recent precedent should control).

**44**     Alaska R. Civ. P. 13(a).

counterclaims was . . . necessary to the result in [the original] suit."[45] "Failure to assert a compulsory counterclaim bars a party from asserting it in subsequent suits."[46]

When each party's ability to recover depends on the success or failure of the other's claim, the parties' claims are compulsory to each other.[47] In *Baker v. Duffus* we held that business partners' counterclaims were compulsory to each other because each partner's claims ultimately asserted that the other partner was responsible for the failure of their joint project.[48] If one partner was correct that the second partner's breach of fiduciary duties, conversion, and UTPA violations were responsible for the failure of the project, the second partner could not be correct that the project failed due to the negligence and fraud of the first partner.[49] Therefore the counterclaims were compulsory.

When Griffith filed his original complaint for eviction and damages, Hemphill and Davis's option contract counterclaims were compulsory.[50] Griffith brought the FED suit against Hemphill and Davis when they held over on the property they had leased from Griffith. Their lease included an option to purchase the property.

---

[45]   *Domke v. Alyeska Pipeline Serv. Co.*, 137 P.3d 295, 301-02 (Alaska 2006); *see also Wells v. Noey*, 399 P.2d 217, 219-20 (Alaska 1965) (holding plaintiff's claim that tax deed was invalid was compulsory because earlier adverse possession claim required that tax deed be proven valid). *But see Ellingstad v. State, Dep't of Nat. Res.*, 979 P.2d 1000, 1010 (Alaska 1999) (no logical relationship between claims that arose from same land contracts but involved different legal questions and evidence). *See generally* RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (AM. L. INST. 1982).

[46]   *Dickerson v. Goodman*, 161 P.3d 1205, 1208 (Alaska 2007).

[47]   *Baker v. Duffus*, 441 P.3d 432, 436 (Alaska 2019).

[48]   *Id.* at 437.

[49]   *Id.* at 436-37.

[50]   "Whether counterclaims are compulsory is a question of law." *Id.* at 436. *See also id.* at 435 ("Interpreting the Alaska Civil Rules 'presents a question of law that we review de novo.' " (quoting *Ellingstad*, 979 P.2d at 1004)).

Griffith had no right to evict Hemphill and Davis from the property if they properly exercised their right to purchase it. Hemphill and Davis's counterclaims based on the option to purchase concerned the same contract, parties, and facts. As in *Baker*, in which the parties' claims revolved around fault for the failure of a business project, the parties' claims at issue here also revolved around a single legal issue — the right to possession of the property. So Hemphill and Davis's claims were compulsory, and they had no choice but to bring the claims or forfeit them entirely.[51]

These claims were therefore not "separable" from the rest of the possession and damages claims, which did not terminate favorably to Griffith. So Griffith cannot show favorable termination of the prior proceeding even under a rule that allows separable claims to serve as the basis for a subsequent claim of malicious prosecution. We therefore affirm the superior court's dismissal of the malicious prosecution claim.

**D.     It Was Not Error To Dismiss Griffith's Abuse Of Process Claim Because He Did Not Allege An Ulterior Purpose Independent From The Process.**

"Abuse of process differs from malicious prosecution in that the [tortious conduct] is not commencing an action or causing process to issue without justification."[52] Rather, abuse of process is misusing or misapplying an otherwise justifiable process "for an end other than that which [the process] was designed to accomplish."[53]

To state a claim for abuse of process, a plaintiff must show an "ulterior purpose independent from the process" and "a willful act in the use of the process not

---

[51]     *See id.* at 436-37 (counterclaims were compulsory because proving them would defeat initial suit).

[52]     PROSSER AND KEETON, *supra* note 35, § 121, at 897.

[53]     *Id.*

proper in the regular conduct of the proceeding."[54] Griffith's complaint in this case alleged that Hemphill, Davis, and JDO had "multiple ulterior purposes" and engaged in willful acts "not proper in the regular conduct of the proceeding."

The superior court dismissed Griffith's abuse of process claim, concluding that Griffith's allegations failed to establish the second element of the tort: a "willful act . . . not proper in the regular conduct of the proceeding."[55] The superior court reasoned that the "willful acts" alleged by Griffith were normal acts of litigation that cannot, on their own, establish an abuse of process claim. Griffith challenges this conclusion on appeal. We do not reach this point because Griffith's complaint fails to allege the first element of the tort: an "ulterior purpose independent from the process."[56]

To state a claim for abuse of process, the plaintiff must allege "a purpose for which [the process] was not designed."[57] "The required motive in an abuse of process claim is to put pressure on the person who is wrongfully sued to perform or to refrain from performing an action unrelated to the process."[58] An example of an

---

[54] *Greywolf v. Carroll*, 151 P.3d 1234, 1243 (Alaska 2007); *see also* PROSSER AND KEETON, *supra* note 35, § 121, at 898.

[55] *Greywolf*, 151 P.3d at 1243.

[56] *Id.*

[57] *Cornelison v. TIG Ins.*, 376 P.3d 1255, 1268 (Alaska 2016) (quoting *Greywolf*, 151 P.3d at 1243); *see also* RESTATEMENT (SECOND) OF TORTS § 682 cmt. b (AM. L. INST. 1977) ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.").

[58] *Cornelison*, 376 P.3d at 1268.

"ulterior purpose" is "to extort the plaintiff and force him to take some action by the use of the process as a threat."[59]

By contrast, use of legal process to accomplish the aims for which it was designed is not an "ulterior purpose," even if the party initiating the process is motivated by personal gain or spite.[60] For example, in *Cornelison v. TIG Insurance*, a workers' compensation insurer petitioned the Alaska Workers' Compensation Board to terminate the benefits of an employee who was injured at work and found to be totally disabled.[61] The worker sued the insurance company for abuse of process. The worker had alleged that the insurer "wanted to terminate [the worker's] benefits because the benefits were expensive, not because [the insurer] thought [the worker] was in fact no longer disabled."[62] We affirmed dismissal of the claim because no "ulterior purpose" was alleged: regardless of whether the insurer was motivated by the merits of its claim or by its bottom line, the insurer used the "appropriate process" to terminate the worker's benefits.[63]

---

[59]    *Sands v. Living Word Fellowship*, 34 P.3d 955, 961 (Alaska 2001); *see also DeNardo v. Cutler*, 167 P.3d 674, 678 (Alaska 2007) ("The ulterior purpose 'usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, but the use of the process as a threat or a club.' " (quoting PROSSER AND KEETON, *supra* note 35, § 121, at 898)).

[60]    RESTATEMENT (SECOND) OF TORTS, § 682 cmt. b (AM. L. INST. 1977) ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.").

[61]    *Cornelison*, 376 P.3d at 1262-63.

[62]    *Id.* at 1268.

[63]    *Id. See also Caudle v. Mendel*, 994 P.2d 372, 373, 376 (Alaska 1999) (holding complaint alleging that attorney representing wife in divorce proceeding relied on baseless allegation of domestic violence to evict husband from marital home and to obtain attorney's fees from wife's family failed to state abuse of process claim because neither aim was "illegitimate in the sense required by the abuse of process tort").

Like the worker in *Cornelison*, Griffith failed to allege an ulterior purpose that can support an abuse of process claim. Griffith alleged that Hemphill, Davis, and JDO had ulterior purposes for litigating their counterclaims against him in the original action, "including, but not limited to, intentionally delaying the F.E.D. while looking for other properties to lease and their written intention to cause [Griffith] 'substantial damages'[*sic*]." In other words, Griffith alleged that Hemphill, Davis, and JDO pursued their counterclaims against him to hinder and delay his attempt to evict them. But attempting to delay or defeat an eviction is a proper purpose for bringing counterclaims asserting a right to possession of the property in question. The right to possession is at the heart of FED proceedings.[64] These counterclaims alleging a right to possession based on a contractual option to purchase the property were an "appropriate process" for contesting Griffith's right to evict them from the property.

Because Griffith failed to allege an "ulterior purpose" sufficient to state a claim for abuse of process, we affirm the superior court's dismissal of that claim.

## V. CONCLUSION

We AFFIRM the superior court's grant of Hemphill, Davis, and JDO's motion to dismiss.

---

[64] *See, e.g.*, *Vinson v. Hamilton*, 854 P.2d 733, 737-738 (Alaska 1993) (indicating that even in FED action that involves tenant counterclaims for money damages "the central issue of the case is still possession"); *Chilton-Wren v. Olds*, 1 P.3d 693, 698 (Alaska 2000) ("FED hearings exist to protect a landlord's right to possession and to prevent the use of self-help.").